F. L. CRANE v. CHOUTEAU, HARRISON & VALLE, *et al.*

FINDINGS OF FACT, *When Conclusive; Oral Testimony.* Where a case is tried by a court without a jury, and special findings of fact made, and those findings are based upon oral testimony, it is settled that in this court such findings are conclusive upon any disputed and doubtful questions of fact.

*Error from Shawnee District Court.*

ON the 5th of January 1874, *Chouteau, Harrison & Valle,* as plaintiffs, recovered a judgment in the district court of Shawnee county, against *Franklin L. Crane,* C. K. Holliday, and two others, for $12,902.15, and costs. On the 29th of April 1875, *Chouteau, Harrison & Valle* assigned and transferred such judgment to *Henry Levis.* On the 3d of May 1875, said *Levis* executed a release of the whole judgment as to said Holliday, acknowledging in said release the payment on the judgment by Holliday of $7,450. On the 5th of June 1875, *Levis* executed in favor of *Crane* a release of said judgment as to certain described lots and lands, for the expressed consideration of $2,200 recited in said release as being paid by said *Crane.* On the 22d of March 1876, a writ of execution on said judgment was issued to the sheriff of Shawnee county, and said sheriff, in obedience to said writ, levied upon

certain lands, and also upon a large number of city lots belonging to *Crane*, and advertised the same for sale on the 15th of May, and on that day sold a part of the lands and lots so advertised to *A. S. Johnson*, for $5,468, (that sum being $65.41 in excess of the amount of debt, interest, and costs that day due on said judgment.)

On the 14th of April 1876, *Crane* commenced this action against *Chouteau, Harrison & Valle, Henry Levis, A. J. Dull, D. L. Lakin, George W. Veale*, and *A. S. Johnson*, to enjoin the confirmation of said sheriff sale, and to compel satisfaction of record of the said judgment. *Crane* claimed that the purchase made by *Levis* of *Chouteau, Harrison & Valle* was made with funds belonging to the "Consolidated Railroad Construction Company," which company had assumed the payment of the judgment. *Crane* was absent in California from October 1874 until December 1875, and had no personal knowledge of the pretended payment of $2,200 made in his name June 5th 1875, and the release to him of that date, and he claimed that such pretended payment was obtained by reason of certain fraudulent representations made to his (Crane's) attorney-in-fact, that the procuring of such payment and the executing of such release constituted a part of certain fraudulent acts and proceedings, on the part of *Levis* and others to keep said judgment alive as to him, (Crane,) when said judgment had been in fact fully paid. *Chouteau, Harrison & Valle* answered, disclaiming any interest in the judgment since their assignment to *Levis*, and all knowledge of any proceedings thereon, in their name or otherwise, since such assignment. The other defendants answered, alleging that the purchase of the judgment made by *Levis* was a purchase by him in good faith and for himself, and denying any payments on the judgment other than those above mentioned. Other facts and proceedings are stated in the opinion. Trial at April Term 1877. The district court found in favor of the defendants, and dissolved the temporary injunction theretofore granted. *Crane* appeals, and brings the case here on error.

*Douthitt & McFarland,* for plaintiff.

*Jacob Safford,* and *A. L. Williams,* for defendants.

The opinion of the court was delivered by

BREWER, J.: This was an action to restrain the collection of a judgment against the plaintiff, on the ground that since its rendition it had been fully paid and discharged. The case was tried by the court without a jury, special findings of fact made, and judgment rendered for defendants. The court made 32 findings. As to most of them no objection was taken, the matters embraced in them being beyond dispute. The 28th, 29th, 30th, and 31st are objected to, and it is insisted that the court erred in those findings, and in not making two findings tendered by plaintiff. The facts are substantially as follows: The plaintiff and C. K. Holliday were accommodation indorsers on a note given by the King bridge company. On 5th January 1874, Chouteau, Harrison & Valle recovered judgment thereon against the plaintiff and Holliday. Prior to the judgment, and to secure plaintiff and Holliday, the bridge company gave to them a chattel mortgage on certain bridges. Under that mortgage they took possession of the bridges, and thereafter sold the same to the Kansas Midland Railroad Company. The railroad company gave them therefor, on 1st August 1874, its promissory note payable November 1st 1874, for the exact amount of the judgment and interest, and as collateral security $30,000 first-mortgage bonds, and $250,000 stock certificates of the company. The bridges were taken and used on the line of the railroad. On October 31st 1874, the Kansas Midland Railroad Company, having partially completed its road, and being in an embarrassed condition, made a contract with its creditors, who entered into a joint-stock association known as the "Consolidated Railroad Construction Company," or more commonly as the "Pool," by which the pool agreed to finish the construction of the road, and the railroad company to turn over its entire assets to the pool. The

articles of association of the pool signed by the parties thereto recited that it was entered into for the purpose of compromising, settling, validating and discharging, or providing for the payment and discharge, or securing the claims of the creditors of the railroad company, as well as for the completion of the road; provided that it should enter into a contract for the completion of the road; that the members of the pool should turn over to it all bonds and securities held by them for their claims against the railroad company; that the business of the pool should be transacted by three trustees, Andrew J. Dull, George W. Veale, and D. L. Lakin, and that on the completion of the road the assets should be distributed among the members of the pool in proportion to their several interests, as determined by the amount of their claims, a schedule of which was attached to the articles. In such schedule appears an item described as " Holliday Bridge Claim," which referred to the indebtedness heretofore named. Henry Levis was the clerk of the trustees, and as the special representative of Andrew J. Dull, who was absent most of the time, took an active share in the management of the business of the pool. On April 29th 1875, Chouteau, Harrison & Valle assigned the judgment to Henry Levis. On the 3d of May 1875, Levis as assignee, executed to Holliday a release of all liability on the judgment, receiving in consideration therefor Holliday's half-interest in the K. M. Railroad Company note, with the collateral bonds and stock certificates, and also an assignment of a claim of $5,000 for money advanced to the K. M. Railroad Company, and named and allowed in the schedule attached to the articles of association heretofore referred to. On May 5th 1875, Crane, by an attorney-in-fact, duly authorized, assigned and transferred his interest in said note and collaterals to said Levis, and received in consideration therefor a partial release and discharge as to the judgment. Between November 12th 1874, and August 3d 1875, the pool, in settling the debts of the K. M. Railroad Company, and in completing the construction of the road, disbursed some $240,631.13, taking therefor 259

receipted vouchers.   In the list of disbursements reported by
the trustees appears the note of the railroad company to
Crane and Holliday.

Upon the facts above stated there is little dispute.   The
bone of contention is, whether the K. M. Railroad Co., or
the pool, ever assumed to pay the judgment, or ever in fact
paid it.   The district court found that they had done neither.
And upon both questions we must sustain the conclusions of
that court.   It would be enough to refer to the repeated rul-
ings of this court, that the findings of fact made by the trial
court, like the verdict of a jury, settle all disputed questions
of fact.   But we may go further, and say that, as we read the
testimony, it points unmistakably to the conclusion reached
by that court.   The papers executed indicate this.   The
railroad company found some bridges in the possession of
Crane & Holliday, and bought them.   It gave its note with
collateral security for them.   That note evidenced its prom-
ise.   It was a negotiable note.   It was a promise to pay
Crane & Holliday directly.   Did the railroad company also
agree to pay the judgment?   If before maturity the payees
had indorsed the note to a *bona fide* holder, would the com-
pany have been under a double liability — one to the holder
of the note, and the other to the plaintiffs in the judgment
against Crane & Holliday?   It certainly would have been,
if it had promised to pay the judgment.   The identity in
amount of note and judgment proves nothing.   The judg-
ment-debtors sold the bridges to raise means to pay the judg-
ment, and therefore the size of the judgment determined the
price of the bridges and amount of the note; "only this and
nothing more."

Again, Holliday, who was jointly interested with Crane in
note and judgment, testifies positively, that he conducted the
negotiations for the sale of the bridges to the railroad com-
pany, and that it did not assume to pay the judgment; that
the note was the evidence of its promise in fact, and that he,
with the knowledge of the officers of the company, and with-
out any objection from them, tried to dispose of the note and

collaterals before maturity. And again, his own conduct speaks still more strongly to the same effect. Himself a member of the pool, familiar with its purposes, its articles, and its officers, after the purchase of the judgment by Levis, we find him giving in settlement of his liability on the judgment, not merely his interest in the note and collaterals, but a large allowed claim against the pool. Surely this would not have been done if the railroad company had assumed to pay the judgment, and the pool had succeeded to its obligations. As against this, the talk at the meeting for the organization of the pool, and the understanding of its members, is not sufficient. In the first place, they who were present do not agree as to either. In the second place, Holliday and Crane were evidently the objects of interest, rather than Chouteau, Harrison & Valle; in other words, the parties present were more anxious to save Holliday and Crane from loss, than to secure Chouteau, Harrison & Valle their money. The only solicitude about paying the judgment was because thereby the judgment-debtors would be released. In the third place, as the situation of the parties was pretty thoroughly understood, it was natural that the result sought to be accomplished, rather than the specific means, the general fact rather than the details, should be spoken of, and that the expressions, "the bridge matter," the "Holliday claim," and the "Chouteau judgment," should be freely used as referring to the same obligation.

With reference to the payment or assignment of the judgment, the testimony is undisputed, that both judgment and note were transferred to Levis, that the trustees reported a payment of only the note, and that upon the record the judgment still remains vested in Levis. It seems clear also, that at the time the judgment was assigned to Levis the pool did not have the funds with which to purchase it, and that Levis either paid his own money, or obtained means elsewhere than from the pool. Levis was not examined, and there is no positive testimony showing whose money was so used, or whence obtained; and notwithstanding some circumstances throwing suspicion on the transaction, we cannot say that the

plaintiff, on whom the burden of proof rests, has shown that the purchase of the judgment was by the pool, or at its instance, or for its benefit. There is certainly nothing to prevent an agent, as Levis, from purchasing such a judgment at his own cost, and for his own benefit; and if the principal makes no objection thereto no one else can complain.

The judgment clearly follows from the findings of fact, for if the pool never assumed to pay, and never did pay the judgment of Chouteau, Harrison & Valle, there is no ground for restraining its collection. The judgment is affirmed.

All the Justices concurring.