## JOHN S. LEMON, et al., v. JOSEPH FOX.

BANKING FIRM; *Certificate of Deposit; Words "Cashier" or "Managing Partner" not Affixed to Signature, Liability of Firm.* Where a firm consisting of three members is engaged in business as a private bank, and had been so engaged for about a year, with M., one of the partners, as resident and managing partner, and F., who has been in the habit of dealing with the bank, goes into its ordinary place of business, and, intending to deal with it, hands over the counter to such managing partner fifty dollars, in the usual manner for deposit, and receives therefor, upon a printed blank in the name of the bank, a certificate of deposit signed by M., and nothing is said about any personal loan to M., and no intimation given of any other than, as F. intended, a transaction with the bank, and F. has no knowledge of any agreement between the partners as to the form of the firm's blanks or the manner of the firm's signature, *held,* that such certificate was binding upon the firm, and that notwithstanding M. did not affix to his signature to the certificate any such words as "cashier" or "managing partner," and although M. intended to take it as a loan to himself, and did not enter the transaction in the books of the firm nor pass over to its credit the money, but appropriated the same to his own use, and although the blank form used for the certificate was not the one generally used by the bank after the formation of the partnership, but that used by M. while carrying on by himself the business of banking prior thereto in the same place and under the same name.

### Error from Nemaha District Court.

ACTION brought by *Fox* against *Lemon* and *Hosea.* Trial at October Term, 1877, of the district court, and findings and judgment for *Fox.* Defendants bring the case here. The facts are fully stated in the opinion, *infra.*

*Judson & Motter,* for plaintiffs in error:

While transacting the business of the firm, Mather was also carrying on business on his own account. Even if he were authorized to bind the firm by his individual signature, such an instrument as the certificate in suit would be *prima facie* an individual obligation. This presumption could only be overcome by proof, on the part of the plaintiff below, that the money was received by Mather for partnership purposes, or was actually applied to the use of the partner-

ship, or was represented by Mather, at the time of borrowing the money, to be for the use of the firm. (Story on Part. 139; 38 Me. 500; 9 Pick. 272; 5 Mason, 184; 1 Denio, 471; 3 Humph. 209; 5 Pick. 11; 8 Ga. 385; *Ex parte Bolitho*, Buck, 100.)

Under these circumstances, it would seem that the certificate issued to Fox could not be considered an obligation of the firm. It makes no difference whether the lender did or did not know whether the money was actually applied, or intended to be applied, to the business for which it was borrowed or not. (Story on Part. 139.) If Mather borrowed the money on his own credit, this firm would not be bound, even though the money was actually applied to partnership uses. 1 Smith's L. C. 987; 15 Ill. 200; 6 Harris, 408; 1 Mo. 121; 35 Mo. 428.

In this case, it was attempted to prove a custom on the part of the bank to issue firm certificates in the form of the one sued on, by introducing four witnesses to prove that they had at different times received such certificates. No evidence that the witnesses knew of any such usage, or that such usage ever existed, was offered. Evidence of the circumstances attending one or more particular transactions cannot be introduced to show a general custom. Testimony as to what was the general usage in such cases must be produced. ( 9 Pick. 198; id. 425; 7 Cush. 417; 3 Comst. 502; 2 Wend. 501; 5 Seld. 155.)

Mr. Morse mentions three possible ways in which cashiers might attempt to bind their banks: First, "—— Bank, by A. B., Cashier;" second, "A. B., Cashier of —— Bank;" third, "A. B., Cashier," and fourth, "A. B.," without any addition. Either of the first two modes, he says, is correct, and the validity of the third mode has been established, with hesitation, but beyond question, by the courts. (Banks and Banking, 154, 155; 3 Blatchf. 431; 3 Kern. 309; 11 Mass. 288; id. 94; 18 Pick. 63; 41 Barb. 586; id. 336; 3 Bos. 600.)

The hesitation which courts have expressed in going the

length stated in the last paragraph, and the care with which they have reasoned on the point, would forbid the assumption that they would go any further in sustaining this kind of paper. As Mr. Morse truly remarks, "probably in all such cases that have ever occurred" (*i. e.*, in which courts have sustained contracts signed by cashiers with the simple addition of "cashier," without giving the name of their banks,) "the undertaking was really that of the bank;" so that the law was actually strained in the interest of justice. (Banks and Banking, 156.) But as the court in this case has found that Mather did not intend to bind the partnership, nor did he either borrow the money for the firm or apply it to its use, it would seem that there is no necessity to strain the law to enforce this contract against the partnership. But as far as the courts have gone in enforcing against banks contracts signed by their officers, with the addition of their official titles alone, they have much further to go before they enforce against a bank a contract, signed by its cashier in his individual name without the addition of "cashier." There seems to be no adjudicated case on this point. (Morse on Banks and Banking, 157.)

The case of *The Mechanics' Bank v. The Bank of Columbia,* 5 Wheat. 326, which was relied upon by the plaintiff below, is not an authority upon this point, as it simply decides that parol evidence is admissible to explain the character of the instrument. This was an action of assumpsit upon the common counts brought upon a check, and the question was as to whether parol evidence was admissible to prove that it was a bank transaction. There was no doubt about the fact; it was cut out of the official check-book of the bank; the money was drawn in behalf of and applied to the use of the bank; and it was recognized as an official matter by all parties connected with the transaction. In the case under consideration, exactly the contrary is true, as there is no dispute but that the money was received by Mather from Fox upon, and applied to, his individual account. Besides, in the case of *Mechanics' Bank v. Bank of Columbia,* the instrument sued

on was a simple acquittance, and was neither a bond, bill or note, but simply a memorandum or voucher for the payment, on account of the drawer, of so much money; while a certificate of deposit is nothing more nor less than a promissory note. (1 Kas. 28; Morse on Banks and Banking, 53; 3 Comst. 19; 19 N. Y. 152; 13 How. 218; 2 Barr, 175; 19 Ill. 390.)

*J. E. Taylor,* for defendant in error.

The opinion of the court was delivered by

BREWER, J.: In April, 1873, Milo E. Mather came to Sabetha, Nemaha county, Kansas, and engaged in banking, under the name and style of the "Sabetha Exchange Bank," putting into his business a capital of about $11,000, and continued in business alone under that name until the first day of November, 1875, when he entered into a copartnership with plaintiffs in error to continue the same business at the same place and under the same name. Lemon and Hosea resided at St. Joseph, Missouri, and, by the terms of the copartnership agreement, were not required to give any personal attention to the business. Mather was the resident partner, and managed the affairs of the concern. Before the formation of the partnership, and up to a short time before the dissolution, Mather's financial standing and credit in the community were good — as good as anybody's there. While he lived at Sabetha, both before and during the existence of the copartnership, he was engaged in various other lines of business unconnected with this partnership, such as farming, buying, selling and raising cattle, buying and selling grain at an elevator, and dealing in lumber.

On the 26th of October, 1876, plaintiff Joseph Fox, who had been in the habit of doing business with the bank through Mather as its cashier, went into the bank, and, in the usual way over the counter, deposited fifty dollars, receiving therefor from Mather the following certificate of deposit: [See. next page.]

CERTIFICATE OF DEPOSIT.

No. 485.          SABETHA EXCHANGE BANK,     ⎫
    [Stamp.]          SABETHA, KAS., Oct. 26, 1876. ⎭
  Joseph Fox has this day deposited fifty dollars in cash,
payable to himself or order in like funds, on return of this
certificate properly indorsed, and to be 10 per cent. interest
per annum, if left four months or longer.
    $50.00.                              M. E. MATHER.

Afterward, he drew a check on the Sabetha Exchange Bank
for fifteen dollars, which was paid, and again went into the
bank and drew ten dollars, at which time the payment of
both the ten and fifteen dollars was indorsed upon his cer-
tificate. This was all that was paid. January 3, 1877, the
partnership of Mather, Lemon & Hosea was dissolved, and
thereafter, Lemon & Hosea refusing to recognize this certifi-
cate of deposit as binding on them, this action was brought.
Mather was then in bankruptcy. The action was tried before
the court without a jury. Special findings of fact were made,
upon which the court rendered judgment in favor of plain-
tiff, to reverse which judgment this proceeding in error was
brought. The testimony was all preserved, and is in the
record before us. This testimony is conflicting, and where
so conflicting, the findings of the court must be accepted as
conclusive. (*Crane v. Chouteau*, 20 Kas. 288.)

    In addition to this general rule, the court expressly finds
that the testimony of Mather is not entitled to full credit — a
finding we are not prepared to say was not fully justified by
the testimony. From these findings, in addition to the facts
above stated, appear these matters: The form of the certifi-
cate in this case is that used by Mather before the formation
of the partnership. At the time the partnership was entered
into, a new book of forms for certificates of deposit was pro-
cured, which differed slightly in form from those previously
used, and were printed in ink of a different color. The plain-
tiff had, in addition to the certificate sued on, two of these
new certificates, of which one was as follows:

CERTIFICATE OF DEPOSIT.

No. 1076.      SABETHA EXCHANGE BANK, ⎱
                SABETHA, KAS., May 13, 1876. ⎰

Joseph Fox has deposited in this bank thirty dollars, payable to the order of himself on return of this certificate, ———— after date, with — per cent. interest per annum, for the time specified.

$30.00.                     M. E. MATHER, *Cashier.*

While alone, Mather issued between 450 and 500 of the former certificates, and during the partnership about 200 of the latter. After the partnership was formed, and before the receipt of the new book, a few certificates were issued upon the old forms, of which there is no dispute but that they were firm liabilities; but the dispute arises as to this and some others issued on the old form after the receipt of the new book, and the claim is, that such are the mere individual obligations of Mather. Mather borrowed the money received on this deposit for his private use, and intended to issue his individual obligation, and the firm never received the money, nor was it entered on the books of the firm, and defendants had no knowledge of the receipt of the money or the issue of the certificate, or indeed of any of those claimed to be individual, until after the dissolution. Mather was in fact authorized to bind the firm by signing his name with the addition of cashier, but not otherwise, though plaintiff had no knowledge of this agreement or limitation between the parties. The plaintiff at the time of making the deposit believed, and had good reason to believe, that he was making his deposit to the Sabetha Exchange Bank, and receiving the certificate therefor. He had no information or notice that he was dealing with Mather as an individual, and not with the bank, in that transaction; nor was his attention called to the signature, nor did he notice that the word "cashier" was not affixed to it. And other individuals in dealing with the bank received like certificates of deposit, signed by Mather, without the addition of the word "cashier," and the same were recognized by Mather in the bank as bank transactions, so

far at least as those individuals were concerned or had knowledge.

Did the court err in rendering judgment against the defendants upon these findings? We think not. The cardinal facts are, that plaintiff went into the bank, and finding the person there in charge with whom he had been in the habit of dealing as the representative of the bank, in the usual manner over the counter made a deposit of fifty dollars, and received as evidence thereof this certificate. He supposed he was dealing with the bank, intended no transaction with Mather individually, purposed no loan to him personally, and received no intimation that anything was contemplated on the other side of the counter, save the ordinary obligation which arises when money is handed over the counter of a bank for deposit. Under those circumstances, it would seem that very strong facts must exist before it can be held that the bank is not liable. It is said that the bank did not receive the money, but that Mather individually appropriated it. But the depositor handed his money to the managing partner — the one attending to all the business of the bank. How could he know what such partner did with the money? Was it his duty to inform the other partners that he had given the money to their partner? If he had attempted to inquire into the disposition of the money or the manner in which the partners kept their books, would he not have been properly repelled? That was a matter private to the partners and not open to the depositors.

It is said that Mather intended an individual and not a bank transaction. But he expressed no such intention; he suggested no such transaction; and there were no surroundings to suggest such intention, or imply such transaction. While he was engaged in various business, in which it was natural to suppose money would be needed, yet it is. not pretended that he was carrying on two banks in the same place — one a personal and the other a partnership bank. There was but the one bank, that in which defendants were partners. Now it is generally true, that where transactions pertaining

to certain kinds of business are had in a building devoted to that business, with one of the firm carrying on that business in the ordinary way in which such transactions are carried on, it will be presumed that such transactions are with the firm, and not with the individual partner alone. A farmer brings in a load of potatoes, and taking it to a grocery store, owned and managed by a partnership, sells it, having his conversation as to terms with one of the partners; it is not expressly stated that the firm purchases, nor is the farmer told that it is a personal transaction of the individual partner with whom he trades: is there any doubt but that the firm is responsible, and that, too, notwithstanding the individual partner intends them for his own use, and after the potatoes have been delivered in the store, carries the entire load to his own house, and in fact appropriates them to his own use? Just so is it with partners running and owning a bank. All are responsible for moneys received for deposit in the usual course of business over the counter, unless some notice to the contrary is given to the depositor, and that notwithstanding the fact that the partner actually receiving the money intends to appropriate it to his own use, and does in fact so appropriate it. Again, it is said that the form of the certificate indicated a personal transaction, and that the personal signature of the cashier, without the addition of the word "cashier," does not bind the bank. But who determines the form of the certificate — the bank, or the depositor? Is there any magic in the color of the ink with which a blank certificate is printed, which settles the question as to what party is responsible thereon? Is a depositor to know that a certificate in black ink means the bank, while one in green issued by the same party in a like course of business means simply the cashier? Is not the mere color of the ink and the form of the certificate a matter of private regulation by the bank, of which the depositor knows nothing, and which, without some express notice to him, in no manner affects his rights? How can he tell when one book of forms is exhausted and a new one resorted to? And while the addition of the word "cashier"

may be significant or even essential to the signature of one who as a mere agent attempts to bind a corporate bank by an official act, yet no such rule obtains where the managing member of the firm engaged in the business of banking, receiving money on deposit in the usual course of the business of the firm, issues a certificate in the name of the firm with merely his individual signature. The omission of the word "cashier," or "managing partner," or any other descriptive term, does not avoid the instrument or operate to release the firm from liability on a certificate issued in the regular course of business by the partner authorized to receive money on deposit and transact the business of the firm generally. The very most that can be said is, that such omission is a circumstance tending to indicate the character of the transaction, but not enough to overthrow the other evidence in this case of the actual transaction between the parties. We have given this case considerable examination, not so much because of the amount in controversy, or because it has seemed to us there was any serious doubt about the ruling of the district court, as because we are advised that other cases are depending upon it, and that it has been presented as a test case.

We think the judgment of the district court was right, and that it must be affirmed. As between the partners who have intrusted Mather with this power of managing the firm business, and the community who with knowledge of the existence of the firm and Mather's powers have dealt with the bank, they must be held responsible for his actions.

The judgment will be affirmed.

All the Justices concurring.