## A. G. HOBSON, et al., v. OGDEN'S EXECUTORS.

1. AMENDMENT, *At the Trial; Pleading.* Where, when a case is called for trial, defendants object that the petition is insufficient in not containing a particular allegation, and thereupon the court permits an amendment to be made by inserting the allegation, and it is apparent that the defendants were not surprised by this new allegation, and no application was made for a postponement, and the amendment does not work a radical change in the cause of action, *held,* that it does not appear that the discretion of the court was abused in granting the amendment.

2. ADMISSIONS IN PLEADINGS; *Evidence.* Statements of a party made in pleadings in a court of record, signed by himself, are admissible in evidence against him in a trial other than that in which the pleadings are filed.

3. FINDINGS OF FACT; *Conclusive; Evidence to Sustain.* The finding of a court upon a question of fact is as conclusive in this court as the verdict of a jury; and where there is testimony clearly tending to establish the fact, and sustain the finding, although indirect and circumstantial, this court, will not reverse the finding, even though the only direct testimony is against the finding.

*Error from Dickinson District Court.*

IN August 1860, W. J. Hobson gave to R. W. Ogden his due-bill for $559.12, with *A. G. Hobson* as surety. In 1867 Ogden recovered judgments against said *Hobsons* on said due-bill, and executions thereon were returned "no property found." All the parties resided in Kentucky, and said judgments were recovered in the circuit court of Warren county in that state. *A. G. Hobson*, who then held the "Receiver's Receipts" showing the entry by him of some 800 acres of land lying in Dickinson county, Kansas, on the 23d of March 1870 assigned said "receipts" to his son *Joseph V. Hobson*, who also resided in Kentucky. In 1872 Ogden commenced a suit against said *A. G. Hobson* and W. J. Hobson in the district court of Dickinson county, on his Kentucky judgments, and sued out an order of attachment, which was levied upon 160 acres of the lands so as aforesaid transferred or con-

veyed to *Joseph V. Hobson* by his father. Said action was prosecuted to final judgment by Ogden, who recovered judgment therein for $953.70 and costs; and thereupon *Ogden* commenced this action against said *A. G.* and *Joseph V. Hobson* to set aside the assignment or conveyance of 23d March 1870, as to the 160 acres of lands attached, and to subject said lands to the payment of his said judgment. The petition alleged that said conveyance was without consideration, and fraudulent as to *Ogden*. This action was tried at the March Term 1874. The district court found that said assignment or conveyance was without any consideration, and was made to defraud the creditors of said *A. G. Hobson*, and rendered a decree setting the said conveyance aside, and ordered and directed that unless the defendant *A. G. Hobson* pay to *Ogden* the amount of the judgment rendered in the former action, with interest and costs, within ten days, an order of sale be issued to the sheriff of Dickinson county commanding and requiring him to sell said attached lands, and out of the proceeds of such sale to pay the said judgment and costs. From this decree the *Hobsons* appeal, and bring the case here on error. The errors and proceedings complained of are stated in the opinion. [After the action was tried in the court below, *Ogden* died, and his executors, *W. V.* and *H. V. Loving*, were substituted as plaintiffs, and the action here is against them as defendants in error.]

*Case & Putnam,* for plaintiffs in error:

1. After the trial commenced the plaintiff asked leave to amend his petition by inserting an averment that the debt was contracted prior to the conveyance. Objection was made on the ground that it changed the claim of the plaintiff. Objection overruled and excepted to. The plaintiff had not notified the defendants that they would be called on to rebut evidence of *prior* indebtedness, either to the plaintiff or other creditors. The amendment wholly changed the status of the case, and the court erred in allowing the amendment.

2. The evidence of the plaintiff below establishes the following facts only: That Atwood G. Hobson was the father of Joseph V. and W. J. Hobson; that they lived in Warren county, Kentucky; that the father was in debt, and unable to pay; that Joseph V. Hobson is a single man, about 23 to 25 years of age; that he has been government gauger in the provost marshal's office, and clerk in the post office; that he has been in the grocery and hardware business; is an active, sober, and industrious man, and has been for himself for the last eight or ten years; that he listed no property scarcely for taxation in Warren county, Kentucky; that if he had any property the witnesses did not know it, and they judge from the tax-list that he had none with which to purchase the land. This is the sum and substance of the evidence for Ogden, as contained in the depositions. The six certificates of land show that Atwood G. Hobson was the owner of them from October 1860 until March 23d 1870. He discloses in his answer in the action in the Warren county court that he was the owner of lands in other states, and as the court ruled him to disclose definitely where it was, there is no doubt he did so, or the plaintiff below would have shown his refusal. They were recorded on the 10th of November 1871, in Dickinson county, Kansas.

The evidence of the defendants below establishes these facts beyond question: first, that the trade for the land between Jos. V. Hobson and A. G. Hobson was made on the 9th of May 1869, and the price agreed on was $4,000; second, the amount of land was 794.28 acres; third, the value of the land was not to exceed $5 per acre, on the 9th of May 1869; fourth, that the agreement was, that Joseph V. Hobson should pay the $4,000 consideration by taking up, paying and canceling the indebtedness of Atwood G. Hobson, his father, to that amount; fifth, that he did so, and a trifle over. There is no witness in this case who has testified that the sale was not made, that the price was not paid, that the contract was not carried out to the letter by Joseph V. Hobson. The

evidence, wherever the question of consideration is referred to, shows a good consideration, to-wit, the payment of the debts of A. G. Hobson. 8 Kas. 180; 9 Kas. 399.

*N. C. McFarland*, for defendants in error:

1. The amendment did not substantially change the plaintiff's claim. The indebtedness to the plaintiff must have accrued before the commencement of the action in which judgment was rendered in the Dickinson county district court at the April Term 1872. The amendment only makes the petition more specific by stating the *time*. It is such an amendment as the court might well allow after the trial, by conforming the pleadings to the evidence. Nor could the defendants be taken by surprise, for the court will observe that the plaintiff's evidence was in depositions, and must have been on file. The court had power to allow the amendment, and if the defendants were prejudiced thereby they should have asked a continuance.

2. The question then before this court is, whether it will reverse the *finding of facts* of the court below. The rule established by this court as to the weight of evidence necessary to overthrow such finding has been so often stated that no reference thereto is necessary. The record in this case is perhaps more remarkable for what it *does not*, than for what it *does* contain. Neither Atwood G. Hobson, the father, nor Joseph V. Hobson, the son, appears as a witness; and these are the only two persons who know absolutely whether the sale was fraudulent, and without consideration. But they call W. E. Hobson a son of A. G. H., and brother of J. V. H., who pretends to "know" that the sale was made in good faith, and that there was consideration paid, etc., all of which he must have learned from somebody, or, as he says, "These payments have been submitted to me by the parties and the credits mentioned by A. G. Hobson." He was not present when J. V. H. made any payments to his father's creditors. But he once carried a part payment to Dr. V., and does not personally know of any of the payments. Then another son

and brother (Jonathan) tells what he has *heard* about the sale, and how the money was paid, etc.; and by these two witnesses it is mainly expected to be shown that this was a sale in good faith. The two Hobsons implicated state to two other Hobsons how matters stood, and then put them on the stand to tell what they (defendants) had told them. This gets the testimony in the depositions (not in court,) and avoids perjury. But it is all incompetent, as hearsay, and was objected to. The knowledge of the facts in respect to the payment for this land was in possession of defendants, and them only, and they ought to have produced the evidence by themselves, giving the facts. (23 Howard, 477.) When there are such suspicious circumstances as are shown conclusively in this case, the burden of proof is shifted, or at least it becomes necessary for the parties charged with the fraud to make satisfactory explanations. And this even when it is conceded that the consideration was ample, and paid. (6 Wallace, 299–315; 2 J. J. Marsh, 213.) What are the suspicious circumstances really not denied? A. G. Hobson, the father, was in failing circumstances and by repute insolvent for a number of years prior to the conveyance; he sold the land in controversy to his son, and so far as can be ascertained it was all the property he owned at the time. Various witnesses state the age of the son in 1873, when depositions were taken, at from 21 to 25 years, (and he was probably about 21 years old when the agreement to sell was made in 1869.) J. V. Hobson had not listed any property prior to this sale for taxation that could have included assets to pay for this land. The claim set up by the testimony of the brothers, that in 1861, (when about 12 years old,) Joseph V. H. was clerk in office of provost marshal, and made money — that in 1866, (when about 16 or 17 years of age,) he was a partner in grocery business, and a merchant, and that when he was 21 years old he had saved money enough to pay off $4,000 of his father's debts — is utterly absurd. But I claim that if he paid the money, (which is to me incredible,) he cannot be protected. If he had information sufficient to put him upon

inquiry as to his father's insolvency, it is sufficient. (*Pitney v. Leonard*, 1 Paige Ch. 461.) Living with his father, the knowledge of his insolvency will be inferred. (*Dunlap v. Haynes*, 4 Heisk. (Tenn.) 476.) He is not a purchaser in good faith, who knows and assents to the design to defraud creditors, or who might have known by the exercise of ordinary diligence. (*Garaby v. Bayley*, 25 Tex. 294.)

There is no *competent evidence* in the record which shows the son ever paid anything on the pretended purchase. While these defendants have acted unwisely in attempting to perpetrate this fraud, yet it must be admitted they have acted wisely by not attempting to swear it through themselves.

The opinion of the court was delivered by

BREWER, J.: This was an action to set aside a conveyance of a tract of land, and to subject the land to the payment of the debts of the vendor. Three questions are presented. It is insisted that the court erred in permitting an amendment of the petition after the commencement of the trial. As the petition stood it alleged the conveyance in 1870, the recovery of a judgment against the vendor in 1872, and that the conveyance was fraudulent and with intent to hinder, delay and defraud the plaintiff. It did not allege when the plaintiff's claim accrued against the vendor, or even that it accrued before the conveyance. The court permitted an amendment to show that it accrued before 1868. This amendment was made before any testimony was received — was made upon the objection of defendants' counsel that the petition did not state a cause of action without such an allegation. No suggestion of surprise, or application for postponement, was made. Indeed, it is not possible that the party was surprised, for the petition in the action in which judgment was rendered, in the same court, alleged as its cause of action an indebtedness created in 1867. Therefore the claim of error is rested upon the simple proposition, that the court ought not at that time to have permitted such an amendment. We do not think the court abused its discretion in permitting the amendment;

26—16 KAS.

though we think as a general rule, and this does not seem an exception, that such amendments should be made upon terms. We cannot see that the defendants were materially injured by the amendment.

A second error is alleged in admitting a transcript of certain records of the circuit court of Warren county, Kentucky, the county in which all the parties resided. The principal part of this transcript consisted of verified answers of one of the defendants, the vendor of the land in controversy, filed in certain suits in that court, and were offered for the purpose of showing his financial condition which was stated by him in those answers. Of course, as admissions of one of the defendants, they were good against him. The remainder of the transcript, being an order of the court, and an opinion by its judge that a further disclosure was necessary, seem immaterial except perhaps as explaining the filing of an additional answer. We cannot see how either party was benefited or prejudiced by this portion of the transcript. If error to admit it, it was because it was immaterial.

The principal error however alleged is, that the finding of the court is against the evidence. The court found that the conveyance was without consideration, and adjudged it void as against the plaintiff's claim. The vendor and purchaser were respectively father and son. All the parties, as we have seen, resided in Warren county, Kentucky. The father was and for several years had been embarrassed, and unable to pay his debts. The conveyance was of nearly 800 acres of land in Kansas, including the 160 acres in controversy. The contract therefor, as defendants claimed, was made May 9th 1869, and the conveyance, which was by assignment and transfer upon the land-office receiver's certificate, and not by separate deed, March 23d 1870. The consideration as testified to, for none is stated in the conveyance, was $4,000, and was paid by the son in paying certain debts of the father. The son was an unmarried man, of from 23 to 27 years of age, and at the time of this controversy was clerk in the post-office at Bowling Green. Prior to that he had been clerk in the

provost marshal's office, whisky gauger, and for about a year carried on a grocery store in company with his brother. Prior to the conveyance he had never been assessed a dollar, and subsequently only to the extent of a mule valued at $75, and a horse valued at $100. Neither vendor nor purchaser testified in the case, but two sons of the vendor (brothers of purchaser) testified to the terms of the contract, and to the performance by the purchaser, giving names and amount of the father's creditors whose debts were thus paid by the son. They also testified to the son's having money at different times, and they with other witnesses testified to the young man's industry, frugality, and correct habits. It does not appear that the purchaser ever came to Kansas to examine the lands before or after his purchase. Subsequently to the conveyance, the father came here, paid the taxes, filed the conveyance for record, made many inquiries concerning the land, and some statements concerning his intentions in reference to it, which appear to have been differently understood by those who heard them. This gives an outline of the testimony, and only an outline, for it comprises nearly two hundred pages of the record. The minor features of the case, the details of the testimony, it would be useless to attempt narrating. We have examined the entire testimony with care, and cannot say that the court erred in its conclusions. The silence of the parties to the transaction; the fact that the two principal witnesses for the defendants must necessarily have obtained much of their knowledge second hand; the conduct of the parties after the purchase in reference to the land; the successful and continued escape of the purchaser from the assessor; his employment, and apparent means of accumulation, during the years prior to the conveyance; the financial condition and embarrassment of the vendor, all tend strongly to support the conclusion of the court, that the conveyance was without consideration. At any rate, we do not see testimony in the record sufficient to justify us in reversing the judgment, and it will be affirmed.

All the Justices concurring.