Wilson v. Lightbody.

---

W. J. WILSON v. J. WESLEY LIGHTBODY AND JAMES McGEE.

ATTACHMENT, *Dissolved; Practice in Supreme Court.* Where a trial court hears a motion to dissolve an attachment upon oral evidence, and upon such evidence makes a finding in favor of one of the parties and against the other, the supreme court cannot ignore such finding, nor reverse it, unless the supreme court can say as a matter of law that the finding is erroneous. If the evidence in such a case is conflicting and pretty evenly balanced, and sufficient evidence is introduced on each side of the case to sustain that side, provided the evidence on the other side be not considered, then the finding of the trial court is generally conclusive. In such a case the supreme court cannot retry the facts upon the evi-

dence and determine upon which side the preponderance exists. All that the supreme court can do in such a case is to look into the evidence to see whether there is sufficient evidence to sustain every ingredient of the finding of the trial court; or, in other words, to see whether there is such a lack of evidence that the supreme court can say as a matter of law that the finding is erroneous. And where the main question in the case is, whether a certain sale of goods is fraudulent or not, and the trial court upon oral evidence holds that the sale was made in good faith, *held,* that the supreme court cannot reverse the ruling of the trial court upon the mere ground that many of the circumstances connected with the sale appear suspicious; but can reverse the ruling of the trial court only where the supreme court can say from the circumstances of the case that as a matter of law the trial court erred in its ruling.

### *Error from Harvey District Court.*

Two ACTIONS brought by *Wilson* against *Lightbody* and *McGee* — one action to recover $5,371, the other to recover $2,687. The defendants filed motions in both of these cases to vacate the orders of attachment therein, which had been levied upon a certain stock of goods situated in the city of Newton, Harvey county. Both motions were heard by the court at the same time. August 28, 1882, the court made a general finding in each case in favor of the defendants and against the plaintiff, and sustained the motions of the defendants and dissolved the attachments. *Wilson* brings the orders dissolving the attachments to this court for review. The facts are sufficiently stated in the opinion.

*Greene & Shaver, John Reid,* and *Lucien Baker,* for plaintiff in error.

*Bowman & Bucher,* and *J. W. Ady,* for defendants in error.

The opinion of the court was delivered by

VALENTINE, J.: W. J. Wilson commenced two actions in the district court of Harvey county, against J. W. Lightbody and James McGee. The first action was brought on February 9, 1882, to recover the sum of $5,371, and the second action was brought on February 14, 1882, to recover the sum $2,687. In each of these actions an order of attachment was

obtained. In the first case the order of attachment was issued upon the following grounds, to wit:

"That said defendants are about to remove their property or a part thereof out of the jurisdiction of the court, with the intent to defraud their creditors; and are about to convert their property or a part thereof into money, for the purpose of placing it beyond the reach of their creditors; and have property and rights in action which they conceal; and have assigned, removed or·disposed of, and are about to dispose of their property or a part thereof, with the intent to defraud, hinder or delay their creditors."

In the second case, the order of attachment was issued upon substantially the same grounds as was the attachment in the first case, except that in the second case McGee was not charged with committing any wrong, and no attachment was asked for against him. These orders of attachment were levied upon a certain stock of goods situated in the city of Newton, Harvey county, Kansas. Afterward, the defendants filed motions in both of these cases to vacate these attachments, upon the ground that the matters and things set forth in the plaintiff's affidavits for the attachments were untrue and false. The defendants also filed affidavits denying the truth of all the grounds set forth in the plaintiff's affidavits for the attachments. Both these motions to vacate the attachments were heard by the court at the same time. Both parties introduced evidence, and the evidence was nearly all in parol. Upon this evidence the court made a general finding in each case in favor of the defendants and against the plaintiff,.and sustained the motions of the defendants and dissolved the attachments. From these orders dissolving the attachments the plaintiff now appeals to this court, bringing the two cases to this court on petition in error.

It appears from the evidence in these cases that the property levied on was originally the property of the defendant J. Wesley Lightbody, but that on the 8th day of February, 1882, he sold the same to J. Gerson & Co.; and the only question presented to the court below upon the evidence was whether this sale by Lightbody to J. Gerson & Co. was made

in good faith, or was made for the purpose of hindering, delaying or defrauding the creditors of Lightbody.  It appears that nearly all the parties are related to each other, and have had various dealings with each other for several years. Wilson and Lightbody are brothers-in-law; but in just what way they are brothers-in-law the evidence does not show. Lightbody and McGee are also brothers-in-law, and Lightbody's wife is a sister of McGee; and the firm of J. Gerson & Co. is composed of J. Gerson and Mrs. Lightbody, the wife of J. Wesley Lightbody.  The stock of goods at their invoice prices amounted to about $17,000, and they were sold by Lightbody to J. Gerson & Co. for $11,052.50, or about 65 per cent. of their invoice price.  It was admitted by the plaintiff on the trial, that this was a fair price for the goods. Gerson, on his own account and as his part of the purchase-money, paid $552.50 in cash and $4,500 in notes.  These notes were placed in the hands of a trustee to be collected, and the proceeds thereof to be used in the payment of the claims of certain creditors of Lightbody.  Mrs. Lightbody, on her part, assumed the payment of a debt of $4,000 which Lightbody owed to Mrs. McGee, and gave a credit to Lightbody of $2,000 on a debt which Lightbody owed to herself; and she probably also became security for Lightbody on some of the other debts which Lightbody owed.

Now these transactions look very suspicious, and we can hardly feel that they could have been consummated in the utmost good faith; and yet the evidence does not so clearly show that they were consummated in bad faith that we can say as a matter of law that they were not consummated in good faith.  The entire transactions were stated in detail by the several witnesses in their oral testimony; all the parties to the two suits testified orally before the court, and so also did their clerks, and Gerson, and several other persons; and the books and papers with reference to the transactions were also before the court: and yet, after the court had heard and seen all this evidence, it found in effect that all the transactions with reference to the sale of said goods and their trans-

29 — 29 KAS.

fer from Lightbody to Gerson & Co. were had in good faith, and not for the purpose of hindering, delaying or defrauding any of the creditors of J. Wesley Lightbody. The court below saw Wilson and Lightbody and McGee and Gerson, and heard them all testify, and also saw the various other witnesses, and heard them testify, and could tell much better than we can which of the witnesses to believe and which not to believe; and therefore we must take the facts as they were found by the court below. We cannot say as a matter of law that the facts as thus found were not true; and we cannot say from the facts as thus found that said sale as a matter of law was fraudulent and void. It certainly was not shown that the debts from Lightbody to Mrs. McGee and to Mrs. Lightbody were not honest and *bona fide* debts, but rather the reverse;' and considering the relations existing between the parties, we would suppose that if the debts were not honest debts that the plaintiff Wilson might have shown that they were dishonest — that they were mere shams (if they were such), merely trumped-up claims (if they were such), to cover fraudulent transactions. But he did not show these things. Of course we must say that some of the transactions had in this case seem to us very suspicious; and yet we cannot say as a matter of law, and against the findings of the court below, that they were fraudulent and of no effect. Where a trial court hears a motion to dissolve an attachment upon oral evidence, and upon such evidence makes a finding in favor of one of the parties and against the other, this court cannot ignore such finding nor reverse it, unless we can say as a matter of law that the finding is erroneous. If the evidence in such a case is conflicting and pretty evenly balanced, and sufficient evidence is introduced on each side of the case to sustain that side, provided the evidence on the other side be not considered, then the finding of the trial court is generally conclusive. In such a case we cannot retry the facts upon the evidence and determine upon which side the preponderance of the evidence exists. All that we can do is to look into the evidence to see whether there is sufficient ev-

idence to sustain every ingredient of the finding of the court; or, in other words, to see whether there is such lack of evidence that we can say as a matter of law that the finding is erroneous.    In the present case, the evidence was such that a finding by the court below on either side would be upheld. As to conclusiveness of findings, see *Gibbs v. Gibbs,* 18 Kas. 419.    As to the sale of property for the purpose of preferring creditors, see *Campbell v. Warner,* 22 Kas. 604.

Before closing this opinion we might say that if the property of Lightbody was insufficient to pay all his debts, that it was probably not inequitable to prefer the claims of the other creditors before those of the plaintiff Wilson; for some of the evidence seems to show that in the various dealings had between Wilson and Lightbody, Wilson generally over-reached Lightbody, and obtained more than in strict equity and good conscience he was entitled to obtain; and although Wilson's claims against Lightbody are legal and valid, yet probably in pure equity and justice there is less foundation for them than there is for those of any of the other claimants or creditors of Lightbody.    We do not think that it is necessary to consider the evidence in this case in detail, nor to consider the various claims of the several parties in detail. We have considered all the questions raised by counsel for plaintiff in error, and do not think that any of his claims are sufficient to authorize a reversal of the orders and judgments of the court below.    We have considered the questions with respect to the statute of limitations, and with respect to fraud in the disposition of property and concealment of property, and all other questions presented by counsel for plaintiff in error, and consider them insufficient to authorize any reversal in this case.    We think the testimony of McGee was admissible, and certainly it was not sufficiently erroneous to authorize a reversal; his wife was not a party to the suit, and he did not testify for her or against her; and he did not testify concerning any communication made by one to the other. Besides, agency may always be proved by simply proving that the agent in fact acted as the agent of his principal with

the principal's knowledge. The judgments and orders of the court below in these two cases will be affirmed.

All the Justices concurring.