| 32 | 629 |
| 46 | 611 |

## O. O. MARBOURG v. THE LEWIS COOK MANUFACTURING COMPANY.

ATTACHMENT, *Motion to Dissolve Properly Overruled.* In an action instituted by a creditor against the defendant on a claim not due, an attachment was sued out under the provisions of §§ 230 and 231 of the code. The affidavit charged, among other things, that the defendant had sold and conveyed, and otherwise disposed of his property with the intent to cheat and defraud his creditors, and to hinder and delay them in the collection of their debts. Upon the hearing of a motion filed by the defendant to dissolve the attachment, upon the ground that the affidavit for the attachment was untrue, it was shown by the creditor that the defendant was insolvent; that he had executed to another four promissory notes, and to secure the same had given to the payee thereof four chattel mortgages, and that he had included in the notes and chattel mortgages an amount of indebtedness in excess of the *bona fide* amount due to the payee of the notes, with the intent to transfer all of his non-exempt personal property to the mortgagee in payment and satisfaction of an indebtedness very much less than the face of the promissory notes, and for the purpose of cheating and defrauding his other creditors, and also for the purpose of hindering and delaying them in the collection of their debts. *Held,* That upon this showing, the court properly overruled the motion to dissolve the attachment. ( *Wallach v. Wylie,* 26 Kas. 138; *Winstead v. Hulme,* ante, p. 568.)

### *Error from Nemaha District Court.*

ACTION brought January 7, 1884, by *The Lewis Cook Manufacturing Company* against *Oscar O. Marbourg,* to recover $1,721.56, upon two certain negotiable promissory notes executed by the defendant to the plaintiff, which said notes were not due at the time of the filing of the petition. At the same time the plaintiff filed the affidavit of H. C. Solomon, its duly-authorized attorney, for an attachment, which affidavit was in due form, and as grounds for attachment alleged that—

"The said defendant, Oscar O. Marbourg, had sold and conveyed and otherwise disposed of his property with the fraudulent intent to cheat and defraud his creditors, and to hinder and delay them in the collection of their debts; that the said defendant, Oscar O. Marbourg, was about to make a sale or conveyance and disposition of his property with the fraudulent intent to cheat and defraud his creditors, and to

hinder and delay them in the collection of their debts; and was about to remove his property with the intent and to the effect of cheating and defrauding his creditors, and hindering and delaying them in the collection of their debts."

At the same time, plaintiff filed an undertaking and attachment bond, which were in all respects in due form of law. Thereupon the clerk of the district court issued an order of attachment to the sheriff of Nemaha county, and on January 7, 1884, at two o'clock P. M., he executed the same by attaching a large amount of goods, wares, chattels, and personal property, as the property of Oscar O. Marbourg, in Nemaha county, and the order of attachment was thereafter in due form returned to the clerk of the district court. On February 4, 1884, the defendant filed his answer to the petition of the plaintiff, containing a general denial, and stating that the plaintiff's pretended cause of action had not accrued at the time the action was brought, and also alleging that he had paid all sums, of every kind and nature, that were due or to become due from him to the plaintiff. To this answer, the plaintiff filed a reply containing a general denial of all the allegations therein.

On February 5, 1884, the defendant filed his motion to dissolve the attachment, for the following reasons:

"First, because no sufficient affidavit or bond had been filed, as required by law; second, because the proceedings for attachment were irregular, informal, and void; and third, because the facts stated in the affidavit for attachment were untrue and without any foundation."

The defendant also filed his affidavit, which was duly verified, denying the truth of each and every ground set forth in the affidavit for attachment. This motion was heard at the April term of court for 1884. Affidavits and oral testimony were introduced; upon the hearing thereof, the court made and filed the following conclusions of fact:

"1. On or about September 9, 1882, the defendant embarked in the hardware business at Sabetha, a city of about 1,500 inhabitants, in this county. He had recently purchased E. ½ lot 4, block 29, in Sabetha, which had a business build-

ing thereon; and he purchased his opening stock of hardware about September 9, 1882, amounting to about $6,000, from the Western Hardware Company, a corporation doing a wholesale hardware business at Atchison, Kansas, of which corporation his brother, W. W. Marbourg, was president and manager. Said corporation failed in business on September 25, 1882. Within a few months afterward said W. W. Marbourg bought up and took assignments of the claims of creditors against the corporation, but the business had never been resumed.

"2. Said defendant remained in business until January 2, 1884, and was apparently carrying on a large trade, and his goods were stored in several localities in Sabetha, for want of room in said business building. At said last date his stock was very large for that place, there being two other tolerably large and one other small hardware store in Sabetha. In some of the lines of his trade he had enough goods for two or three years, while in other lines he was not overstocked, although having a good supply. Between August 1, 1883, and January 1, 1884, he had become indebted to merchants and manufacturers for goods over the sum of $18,000, nearly all of which indebtedness matured in January and February, 1884.

"3. On or about January 2, 1884, the defendant executed and delivered to said W. W. Marbourg four several promissory notes, which were secured by four chattel mortgages as follows: First, a promissory note for $3,287.10, to the order of said W. W. Marbourg, in ten days, with interest at ten per cent. per annum from date, secured by a chattel mortgage on all wagons, wagon and buggy, phaeton and spring wagon parts in building known as Baker carpenter shop, on lot 7, block 27, Sabetha, and also said building on said lot 8, all wagons set up on lots 9 and 10, block 29, Sabetha, and all wire, smooth and barbed, mixed paints, axes, picks, buggies and buggy parts, clothes wringers, nails, scales, and all hardware, merchandise, goods and chattels, and all other property of every kind and nature in said buildings or on said lots. Second, a promissory note for $6,000, payable to the order of said W. W. Marbourg in thirty days, with interest at 8 per cent. per annum from date, secured by a chattel mortgage on all hardware, wire, nails, cutlery, shelf goods, stoves, tinware, woodenware, guns, clocks, buggies, paints, oil and lead, and all goods, chattels, wares and merchandise, and all other property of every kind and nature in building occupied by O. O. Marbourg as a hardware store on E. ½ lot 4, block 29, Sabetha.

Third, a promissory note for $4,000, payable to the order of said W. W. Marbourg in twenty days, with interest at 10 per cent. per annum from date, secured by a chattel mortgage on all stoves, ranges, wagons, nails, buggies, parts of buggies, barbed wire, fence staples, buckthorn wire fencing, corn shellers and all goods, chattels, wares and merchandise, and all other property of every kind or nature in the two sheds occupied by said O. O. Marbourg as storehouses on the west end of O. O. Marbourg's homestead, known as lots 1 to 12, block 6, in Sabetha. Fourth, a promissory note for $7,949.33, payable to the order of said W. W. Marbourg in forty days, with interest at 12 per cent. per annum from date, secured by a chattel mortgage which covers and describes all of the personal property mentioned in the first three mortgages, and in addition all feed mills and wagons in and around said store building, and all goods, wares and merchandise in the Whittenhall barn used as a store house, also two wagons standing in front of said homestead in the street, also the books of account of said O. O. Marbourg, showing indebtedness due said O. O. Marbourg, and all other merchandise, goods, wares and chattels held by said O. O. Marbourg, or under his control, used in the business of said O. O. Marbourg or dealt in by him in the hardware and implement business, and not before more fully specified, and situate in Sabetha, Nemaha county, Kansas. But said mortgage is given subject to said other three mortgages for $3,287.10, $6,000, and $4,000, respectively. Each of said mortgages contains provisions for the taking of immediate possession by the mortgagee when in his judgment the possession and custody of the same in said O. O. Marbourg shall be deemed unsafe, or upon the issue of any attachment or other legal process, or in case the mortgagee shall deem the security insufficient, and that the mortgagee may sell at public or private sale without notice, for cash or on credit, and that all expenses of caring for and selling the property, as well as said indebtedness and interest, shall be paid out of the proceeds of sale.

"4. At the time of taking said mortgages, said W. W. Marbourg also requested the defendant to convey to his mother, Anna M. Marbourg, of Shellsburg, Pennsylvania, said E. ½ of lot 4, block 29, Sabetha, and the defendant and his wife did so make a deed of conveyance of said property on January 2, 1884, which was then handed to said W. W. Marbourg. The consideration for said deed was a first and *bona fide* indebtedness of $2,000 from the defendant to his mother,

which the defendant had been owing for many years, and on which he had kept the interest paid up without paying any part of the principal.

"5. On January 3, 1884, at 8 o'clock A. M., said W. W. Marbourg filed said four chattel mortgages and said deed with the register of deeds of this county, and said mortgages were duly filed and entered, and said deed duly recorded.

"6. As soon as said chattel mortgages were executed, and before the filing thereof, said W. W. Marbourg, with the consent of the defendant, took possession of all the property covered by said chattel mortgages, including the books of account; and said W. W. Marbourg left said accounts, amounting to about $1,000, with his attorney at Sabetha for collection.

"7. After making said chattel mortgages and said deed, the defendant had remaining no real estate except his homestead, and no tangible personal property except his household goods and other exempt personalty, and no visible or apparent means of paying any of his other creditors unless there should be a surplus in the hands of said W. W. Marbourg after satisfying said chattel mortgages, which amounted in all to $21,236.43.

"8. On or about January 4, 1884, said W. W. Marbourg sold and transferred all of the property covered by said chattel mortgages except one buckboard, one phaeton, and the accounts and account books, to Henry L. Whittaker, of Atchison, Kansas, for the express consideration of $21,000, of which $1,000 was paid down, and for the remainder said Henry L. Whittaker executed and delivered to said W. W. Marbourg four promissory notes payable to his order, each for $5,000, and payable in sixty and ninety days, and four and six months, respectively, with eight per cent. interest thereon. Said Henry L. Whittaker was in possession of said property when the first attachment in these cases was levied, and all of said property was taken from his possession by the sheriff on the attachments in these cases, but said property had not been in any way removed, either by said W. W. Marbourg or Henry L. Whitaker, when said attachments were levied; but the same remained in the same condition as before the execution of said chattel mortgages.

"9. Although the defendant was indebted to said W. W. Marbourg, and said W. W. Marbourg held certain evidences of indebtedness against the defendant before the execution of said four promissory notes and said four chattel mortgages, yet said indebtedness was not near so large as the aggregate of said four promissory notes, as the defendant must have known;

but the real indebtedness was greatly enlarged by the defendant in said four promissory notes, and as so enlarged was secured by said four chattel mortgages, for the purpose and with the intent on the part of the defendant of transferring all of his non-exempt personal property to said W. W. Marbourg in payment and satisfaction of his indebtedness to said W. W. Marbourg, which was very much less than $21,236.43, and very much less than the value of the property covered by said chattel mortgages, and for the purpose of cheating and defrauding his other creditors who had sold him goods, and hindering and delaying them in the collection of their debts, and not for the mere purpose of preferring said W. W. Marbourg as a creditor for the amount of the real actual and existing indebtedness of the defendant to said W. W. Marbourg."

And thereon the court made and filed the following conclusions of law:

"1. Shortly before the commencement of these actions and the issue of orders of attachment therein, the defendant had mortgaged, transferred and disposed of his property with the fraudulent intent to cheat and defraud his creditors, and to hinder and delay them in the collection of their debts.

"2. The several motions to dissolve the attachments in these actions, on the ground that the causes for attachment alleged in the several affidavits are untrue, should be overruled."

The motion to dissolve the attachment was overruled. The defendant excepted, and brings the case here.

*Everest & Waggener,* for plaintiff in error.

*Conwell & Wells, Smith & Solomon, Jackson & Royse, Taylor & Bassett,* and *J. D. McCaul,* for defendant in error.

The opinion of the court was delivered by

HURD, J.: The creditors of Oscar O. Marbourg, to the number of twenty-one, instituted actions in the court below against him by attachments. The aggregate amount sought to be recovered in these several actions was about $17,000. Nearly all the actions were brought upon claims not due. A large amount of property was attached. The affidavits for attachments on the claims not due alleged, among other things, the grounds set forth in § 230 of the code. The affidavits for at-

tachments upon the claims due were drawn under § 190 of the code. In each case O. O. Marbourg filed a motion to dissolve the attachment, alleging that the grounds set forth in the affidavit for attachment were untrue. The motions in all the cases were heard at the April term of the district court for 1884, and on the hearing thereof it was agreed, inasmuch as each of the motions presented the same questions, that all should be heard together, and the evidence taken in any one case was used and considered in all the other cases, so far as the same was relevant and competent. On the hearing the court below overruled the motions to dissolve the attachments in each case, and the plaintiff in error now seeks to have this court review and reverse the action of the district court. Three questions are presented by plaintiff in error, as follows, viz.:

" First, that the findings of fact of the court below were not sustained by the evidence; second, that the court below erred in admitting to be read in evidence a copy of a bill of sale, without any effort being made to obtain the original, which was shown to be in existence; third, that the court erred in admitting other incompetent evidence."

The court, at the request of the parties, made its conclusions of fact and of law. Among its conclusions of fact is the following:

"Although the defendant was indebted to said W. W. Marbourg, and said W. W. Marbourg held certain evidences of indebtedness against the defendant before the execution of said four promissory notes and said four chattel mortgages, yet said indebtedness was not near so large as the aggregate of said four promissory notes, as the defendant must have known; but the real indebtedness was greatly enlarged by the defendant in said four promissory notes, and as so enlarged was secured by said four chattel mortgages for the purpose and with the intent on the part of the defendant of transferring all of his non-exempt personal property to said W. W. Marbourg in payment and satisfaction of his indebtedness to said W. W. Marbourg, which was very much less than $21,236.43, and very much less than the value of the property covered by said chattel mortgages, and for the purpose of cheating and defrauding his other creditors who had sold him goods, and hindering and delaying them in the collection of their debts,

and not for the mere purpose of preferring said W. W. Marbourg as a creditor for the amount of the real, actual and existing indebtedness of the defendant to said W. W. Marbourg."

It was held in *Wallach v. Wylie*, 28 Kas. 138, that where a chattel mortgage was executed purporting to secure certain alleged indebtedness largely in excess of the *bona fide* indebtedness actually existing between the parties, and such excess was fraudulent, that the mortgage was void *in toto*, and could not be sustained even to the extent of the actual debt covered by the mortgage. This upon the ground that the statute of the state provides that every transfer of property made with the intent to hinder, delay or defraud creditors is utterly void, and of no effect. (Comp. Laws of 1879, ch. 43, § 2. See also *Winstead v. Hulme*, ante, p. 568.) Therefore, if there was evidence sufficient to sustain this finding of the district court, the attachments were properly sustained. The question was one of fact only. The testimony presented to the district court was not wholly by affidavit. Several witnesses, among others J. E. Black, a former partner of O. O. Marbourg, Ira F. Collins, and John Brady, gave their testimony in person to the court. We have read carefully the whole record, and are convinced that the findings of the court, and especially the finding above quoted, were sustained by the evidence presented in the court below. In a case of this kind, we cannot retry the facts upon the evidence and determine upon which side the preponderance exists. All we can do is to look into the evidence and see whether it is sufficient to sustain the findings of the court below; or in other words, to see whether there is such a lack of evidence that we can say as a matter of law that the findings are erroneous. (*Gibbs v. Gibbs*, 18 Kas. 419; *Railway Co. v. Kunkel*, 17 id. 145; *Wilson v. Lightbody*, 29 id. 446.) Under the findings of fact, the district court committed no error in sustaining the attachments. The other errors complained of, under this view, are immaterial, and therefore it is unnecessary to consider them. The ruling and order of the district court will be affirmed.

—The above and foregoing decision in case No. 3363, also

disposes of cases Nos. 3364, 3365, 3366, 3367, 3368, 3369, 3370, 3371, 3372, 3373, 3374, 3375, 3376, 3377, 3378, 3379, 3380, 3381, 3382, and 3383.

In all of these cases the ruling and order of the district court will be affirmed.

All the Justices concurring.