McCANN v. McCANN *et al.*

No. 118.    Opinion Filed July 13, 1909.

(103 Pac. 694.)

1.   APPEAL AND ERROR—Review—Findings of Court.   Where a case is tried by the court without the intervention of a jury, upon controverted questions of fact, and there is evidence reasonably tending to support the findings of the trial court, such findings will not be disturbed on the weight of the evidence.

(a)   Where the testimony is oral and conflicting, and the finding of the court is general, such finding is a finding of every

special thing necessary to be found to sustain the general finding, and is conclusive upon this court upon all doubtful and disputed questions of fact.

(b) Where a case is tried by the court without the intervention of a jury, and special findings of fact are made, and those findings are based upon oral testimony, in this court such findings are conclusive upon any disputed and doubtful questions of fact.

2. CONTINUANCE—Appeal and Error—Discretion of Court—Review. After the beginning of the trial, and during the progress of the examination of the witnesses, a motion for a continuance, in order to procure witnesses to support the credibility of a party to the action, is addressed to the discretion of the court, and, unless it affirmatively appears that in overruling such motion the court abused its discretion, this court will not revise the action of the lower court.

(Syllabus by the Court.)

*Error from District Court, Kiowa County; Geo. L. Zink, Special Judge.*

Action by Elma McCann against Fred McCann and others. Judgment for defendants, and plaintiff brings error. Affirmed.

On the 23d day of August, 1905, the plaintiff in error, as plaintiff, instituted this action against the defendants in error, Fred McCann Blanch McCann, Abram Pool, C. L. Van Doren, J. W. Walton, and J. B. Walton, as defendants, in the district court of Kiowa county, territory of Oklahoma, declaring: That she was the owner and holder of three certain promissory notes, each in the sum of $500, dated December 15, 1903, due, respectively, October 22, 1904, January 1, 1905, and January 1, 1905, made and delivered to her by the defendants Fred McCann and Blanch McCann as a part of the purchase price of the N. W. ¼ of section 17, township 6 N., range 17 W. of the Indian base and meridian; said land having theretofore been owned in fee simple by Effie L. McCann and having been improved and rendered useful and valuable by the expenditure of large sums of money furnished by the plaintiff. That, in order to reimburse said plaintiff for her outlay of money, said Effie McCann sold and conveyed said land to the defendants Fred and Blanch Mc-

Cann on the 23d day of November, 1903, for the sum of $3,600; all of which sum having been paid except said sums evidenced by the notes therein declared on, being the identical notes given for the balance of the purchase price of said land, on which a vendor's lien was specially reserved and held by said grantor, Effie McCann, to secure the payment of all of said three notes, and said vendor's lien having been then and there given and agreed to by said Fred and Blanch McCann. That said three notes were by the direction of said Effie McCann made payable with the vendor's lien to the plaintiff, in consideration for and to secure the payment of the money advanced by her for the improvement of said land, and for a valuable consideration said notes were duly assigned by said Effie McCann and delivered to the plaintiff prior to the beginning of this action. Also, to secure the payment of the money advanced, before mentioned, the vendor's lien was passed with said notes. That the defendants J. W. Walton, J. B. Walton, and Abram Pool are claiming some interests in said land by reason of certain mortgages given to them by the defendants Fred McCann and Blanch McCann. That on the 20th day of February, 1905, said defendants Fred McCann and Blanch McCann transferred by warranty deed all their right, title, and interest in and to said land to the defendant C. L. Van Doren, in consideration of the sum of $3,600. That when said C. L. Van Doren purchased said land he had full knowledge of the rights, equities, and interest of the plaintiff in and to said land, and at said time, and prior thereto, he had knowledge of plaintiff's vendor's lien thereon, having been fully advised and warned thereof, etc.

On the 19th day of September, 1905, the defendants Walton demurred to plaintiff's petition, on the ground that it did not state a cause of action against them, or either of them, and same was by the court sustained, and plaintiff allowed 10 days in which to file amended petition. On the 4th day of October, 1905, the amended petition was filed, substantially the same as the original, with the exception that plaintiff declared that she was

the holder of said notes as collateral security, and not as the owner, with a prayer for judgment against the defendants Fred McCann and Blanch McCann, and for a foreclosure of her lien against said land.

On December 29, 1905, the defendant C. L. Van Doren separately answered, denying each and every allegation of plaintiff's petition, except as therein admitted, and specifically denying that the notes declared on were given as a part of the purchase price of the land described in plaintiff's petition, but admitted that said Effie McCann sold said land to Fred McCann and Blanch McCann, but denied that a vendor's lien was retained thereon. He further specially denied that said Effie McCann was indebted to the plaintiff at the time of the execution and delivery of said notes and said deed to Fred McCann in the sum of $3,600, or in any sum whatever, and denied that said notes were given to said plaintiff as collateral security. Defendant averred that he purchased said land from Fred and Blanch McCann for a valuable consideration, which consideration was fully paid long prior to the bringing of said action, in good faith, and without notice of any equities or claim on the part of the plaintiff.

On the 6th day of December, 1907, the cause came on for trial before George L. Zink, by agreement, acting as special judge. Witnesses were introduced by both sides to prove their respective allegations. After the beginning of the trial, and during the progress of the examination of the witnesses, the plaintiff filed an affidavit for a continuance, the body of which is as follows:

"Comes now the defendant (plaintiff) Elma McCann, and, being first duly sworn on oath according to law, deposes and says that she has been surprised in the line of evidence that has been adduced by character witnesses in this case in behalf of the defendants to impeach the character of the plaintiff, Elma McCann, and asks for a continuance for the purpose of bringing witnesses from the town of Lone Wolf, 10 miles distant, for the purpose of disproving such line of testimony."

The record shows that said motion was overruled between 9 o'clock a. m. and the noon hour of December 7, 1907, and the

trial concluded on the evening of that day. The order overruling the motion for a new trial and allowing time within which to prepare and serve a case-made is as follows:

"Thereupon plaintiff's motion for a new trial is overruled, to which plaintiff excepts, and exceptions allowed, and 60-10-5 is ordered for plaintiff to make and serve case-made."

This order was entered on the evening of December 7, 1907.

The body of the amendments suggested by the defendant C. L. Van Doren, which was incorporated in the case-made, is as follows:

"* * *' On the trial of the cause, the evidence showed that in the year 1902 Effie McCann, the daughter of the plaintiff, filed a homestead entry on a tract of land known as the northwest quarter of section 17, township 6 north, range 19 west of the Indian meridian, purchasing a relinquishment from a former entryman for the sum of $1,800, which money was advanced by the plaintiff. Effie McCann occupied said land with her father and mother, and made the necessary improvements and cultivation, making proof on the land about November 5, 1903. For the purpose of making improvements and cultivation, the plaintiff advanced money to said Effie McCann aggregating between $400 and $600. That besides the $1,800, and the money advanced to make improvements on said land, plaintiff testified that there was due her from Effie McCann about $700 for money expended for medicines and physicians. The evidence showed: That Effie McCann had been for a long time past an invalid, almost helpless; that the indebtedness from Effie McCann to the plaintiff amounted to between $3,900 and $4,100. Shortly after making final proof on the land involved, on or about November 23, 1903, Effie McCann sold said land to her brother, Fred McCann, executing to him a general warranty deed; the consideration therein named being $3,600, and the consideration that passed being $210, which was advanced by Fred McCann to Effie McCann to make final proof on said land and to pay the $1.25 an acre, which was advanced shortly before or at the time of making proof. The balance of the consideration was evidenced by 'a promissory note given by Fred McCann and Blanch McCann, in the sum of $3,390. At this time, or shortly after, a contract was given by Fred McCann to Effie McCann, in which said Fred McCann offered to reconvey the tract of land to Effie McCann in the

event he failed to pay the $3,390 note. The evidence showed that afterwards Fred McCann gave a mortgage to secure a note of $1,500 to Mrs. Arthur, his mother-in-law, which note evidences advances made by Mrs. Arthur to Fred McCann. This mortgage was given on December 17, 1903. About said time Fred McCann gave a note for $1,500 to the defendant C. L. Van Doren, which was a part of the consideration paid for a section of school land (lease) sold by Van Doren to Fred McCann, and was secured by mortgage. Both of these mortgages were on the tract of land in question. Matters ran on for considerable time, until Fred McCann became financially involved. Mrs. Elma Mc-Cann, the plaintiff, finally secured an assignment of the Mrs. Arthur mortgage to herself, at which time the note of $3,390 was destroyed; Fred McCann giving notes for the difference between the $1,500 and $3,390. Two notes for $500 each were given to Elma McCann, the plaintiff, and one note for $890 was given to Effie McCann. The last note for $890 was indorsed in blank to the plaintiff, Elma McCann. At the time of giving these notes, Fred McCann entered into a contract with the plaintiff, wherein he agreed to reconvey the land in question in the event he failed to pay said notes. Again, and after the giving of this second contract, at the solicitation of his mother, the plaintiff, Fred Mc-Cann, entered into a third contract with the plaintiff, Effie Mc-Cann, and his father, in which he agreed to give them a mortgage on the land in question. None of these contracts were ever filed for record, and no evidence was adduced by plaintiff to show that the defendant C. L. Van Doren was ever told or knew of their execution before the conveyance of said land to him. On or about January 15, 1905, both the note held by Van Doren and the one held by Mrs. Arthur were due and unpaid. Van Doren, who had been out of the territory for some time, came back to Lone Wolf to collect his note and interest. Fred McCann was unable to pay. Van Doren offered to give him time if he would pay the interest. Fred McCann could not or did not do this, and Van Doren was forced to buy the land, which at this time was under a mortgage of $3,100 in the aggregate exclusive of interest. The land was conveyed by Fred McCann to C. L. Van Doren on or about the 20th day of January, 1905, by general warranty deed; the consideration therein named being $3,500. The consideration passing was the payment of the $1,500 mortgage held by the plaintiff, including interest, and the $1,600 mort-

gage and interest which was merged in the transfer to Van Doren. A credit of about $100 was made on another note of Fred Mc Cann to Van Doren. In order to pay this $1,500 mortgage, a loan was made on the land by Walton & Walton. On January 20, 1905, the mortgage held by the plaintiff was paid, and the plaintiff executed a release of her mortgage to Fred McCann. Van Doren took the land subject to the Walton & Walton mortgage. The plaintiff testified that about the time and before the making of the $1,600 mortgage to Van Doren, and before the sale of the school land (lease), she drove over to Van Doren's house and told him not to sell the school land (lease) to Fred McCann, as he had never paid for the land sold to him by Effie McCann. C. L. Van Doren in his testimony denied that she ever came over to his house, or that he ever had such a conversation with the plaintiff. The plaintiff and Effie McCann both testified that they had informed Van Doren, before he bought the land from Fred McCann, that the notes given for the purchase price by Fred McCann had never been paid, and that they had a lien on the land; but the court finds that the defendant C. L. Van Doren did not, prior to the purchase of the land in question, have notice that Fred McCann had not paid for the same. Under the statute, one who sells real property has a special or vendor's lien independent of possession, for so much of the price as remain unsecured, otherwise than by the personal obligation of the buyer, subject to the rights of purchase and incumbrance in good faith without notice. Under the law the assigning of papers carrying a vendor's lien terminates the lien; the lien running only to the vendor of real estate. However, the assignment of paper carrying such a lien as collateral security does not terminate the lien. The contracts for the reconveyance of said land, and especially the one wherein Fred McCann agreed to give a mortgage to secure the notes, was such a security that a court of equity would not hold to be an equitable mortgage on the land, and was security other than the personal obligation of the vendor. Taking the facts and the law into consideration, the court could do nothing other than find in favor of the defendant C. L. Van Doren."

*Geo. A. Spink* and *Lillie C. Spink,* for plaintiff in error.

*W. D. Walton* and *L. M. Keys,* for defendants in error.

WILLIAMS, J. (after stating the facts as above). There was evidence introduced, pro and con, by both parties, tending to sup-

port the respective issues. It is a settled rule of this court that, where a cause is tried without the intervention of a jury, upon controverted questions of fact, and there is evidence reasonably tending to support the findings of the trial court, such findings will not be disturbed on the weight of the evidence, and when the finding is general, it includes all facts necessary to support the claims of the party in whose favor the judgment is rendered, and upon appeal this court will not review the evidence if it reasonably tends to support the issues upon which such finding is made, to determine the sufficiency thereof. *Hunter Realty Co. et al. v. Spencer,* 21 Okla. 155, 95 Pac. 757; *Lookabaugh v. Bowmaker,* 21 Okla. 489, 96 Pac. 651; *Saxon v. White,* 21 Okla. 194, 95 Pac. 783; *Brewer v. Black,* 5 Okla. 57, 47 Pac. 1089; *Meyer Bros. Drug Co. v. Kelley,* 5 Okla. 118, 47 Pac. 1065; *Craggs et al. v. Earls,* 8 Okla. 462, 58 Pac. 637; *Vandenberg v. Walton Lumber Co.,* 19 Okla. 169, 92 Pac. 149; *Gaffney v. Cline et al.,* 19 Okla. 197, 91 Pac. 855; *Dunlap v. Stannard,* 19 Okla. 232, 91 Pac. 845.

In the case of *Knaggs v. Maslin,* 9 Kan. 532 (2d Ed. 362), it is held that where testimony is oral and conflicting, and the finding by the court is general, such a finding is a finding of every special thing necessary to be found to sustain the general finding and that such general finding is conclusive upon the appellate court upon all doubtful and disputed questions of fact. See, also, to the same effect: *Hobson v. Ogden's Ex'rs,* 16 Kan. 388; *Gibbs v. Gibbs,* 18 Kan. 419; *Winstead v. Standeford,* 21 Kan. 270; *Greer v. Greer,* 24 Kan. 106; *Arn v. Hoerseman,* 26 Kan. 415; *Wilson v. Lightbody,* 29 Kan. 451; *Buck & Co. v. Panabaker & Co.,* 32 Kan. 468, 4 Pac. 829.

In the case of *Crane v. Choutea et al.,* 20 Kan. 288, the rule is announced, in an opinion by Mr. Justice Brewer, that:

"Where a case is tried by a court without a jury, and special finding of fact made, and those findings are based upon oral testimony, it is settled that in this court such findings are conclusive upon any disputed and doubtful questions of fact."

In the case of *Lemon v. Fox*, 21 Kan. 156 (2d Ed. 123), in another opinion delivered by Mr. Justice Brewer, the court said:

"The action was tried before the court without a jury. Special findings of fact were made, upon which the court rendered judgment in favor of the plaintiff, to reverse which judgment this proceeding in error is brought. The testimony was all preserved, and is in the record before us. The testimony is conflicting, and, where so conflicting, the findings of the court must be accepted as conclusive."

In the case of *Wilson v. Lightbody*, 29 Kan. 451 (2d Ed. 321), the court said:

"Where the trial court hears a motion to dissolve an attachment upon oral evidence, and upon such evidence makes a finding in favor of one of the parties and against the other, this court cannot ignore such finding nor reverse it, unless we can say as a matter of law that the finding is erroneous. If the evidence in such a case is conflicting and pretty evenly balanced, and sufficient evidence is introduced on each side of the case to sustain that side, provided the evidence on the other side be not considered, then the finding of the trial court is generally conclusive. In such a case we cannot retry the facts upon the evidence and determine upon which side the preponderance of the evidence exists. All that we can do is to look into the evidence to see whether there is sufficient evidence to sustain every ingredient of the finding of the court; or, in other words, to see whether there is such lack of evidence that we can say as a matter of law that the finding is erroneous. In the present case the evidence was such that a finding by the court on either side would be upheld."

See, also, to the same effect: *Marbourg v. Lewis Cook Mfg. Co.*, 32 Kan. 629, 5 Pac. 181; *Burtis v. Wait*, 33 Kan. 478, 6 Pac. 783.

In this case there was competent evidence reasonably tending to support the issues on the part of the defendant, although the preponderance thereof on some of the material issues may have been in favor of the plaintiff. Yet all of the evidence having been oral, and the trial court having had an opportunity to see the witnesses face to face, to observe their demeanor and manner of testifying, their frankness, candor, and sincerity, or want of such,

their opportunity or want of opportunity to be conversant with the facts about which they gave evidence, and, in fact, to weigh under his personal scrutiny everything that goes to determine the fact of the credibility of the witnesses, under such circumstances, this court will not invade the prerogative of the lower court, when there is competent evidence reasonably tending to support the issues, and set aside its findings.

It is further insisted that the trial court abused its discretion in not granting a continuance, in order that the plaintiff might procure witnesses to sustain her reputation as to truthfulness, etc. It appears that she resided at Lone Wolf, about 10 miles from the place of trial, and that the witness assailing her reputation also lived there. The motion was filed in the morning before the trial was concluded in the evening. The court, in ruling upon this motion, had a right to consider that one-half a day would intervene before the case would probably close, that the plaintiff had lived in that community for a number of years, that there were a number of parties from there attending on that trial, and in passing thereupon he exercised a discretion which will not be revised here, except when abused. *Richardson v. Penny,* 6 Okla. 328, 50 Pac. 231; *McMahan v. Norick,* 12 Okla. 125, 69 Pac. 1047; *Butt v. Carson,* 5 Okla. 160 48 Pac. 182; *Riddle v. Gage,* 37 N. H. 519, 75 Am. Dec. 151; *Texas Cent. R. Co. v. Brock,* 88 Tex. 310, 31 S. W. 500. If the testimony had been of a substantive nature, and necessary to support in chief an affirmative material issue, and it appeared that there was a surprise that could not, with proper diligence, have been foreseen, the court should have granted a continuance; but when the evidence is only of an impeaching nature, and relates solely to reputation, that is a matter more largely addressed to the discretion of the court, and its decision, as a rule, on such matters, will not be disturbed on review.

It is further insisted by the plaintiff in error that her rights were prejudiced by reason of the lower court arbitrarily refusing

to hear any argument in support of her motion for a new trial. We have examined the record, and fail to find that it bears her out in this contention, and it is therefore not necessary to pass upon the same; it not so affirmatively appearing from the record.

It is further insisted by the plaintiff in error that the suggested amendments, including the findings of fact of the trial court, were neither made nor filed until after the final adjournment of the term of court, and for that reason should not be considered; but it is not necessary to determine that question in view of this record, for, whether we follow the rule as to a general finding or a special finding, the result in this case would be the same.

However, another serious question arises, and that is as to whether or not any valid order was made extending the time in which a case-made might be prepared and served. The order recites:

"Thereupon plaintiff's motion for a new trial is overruled, to which plaintiff excepts and exceptions allowed, and 60-10-5 is allowed for plaintiff to make and serve case-made."

It is a serious question as to whether or not this order can be deciphered and made intelligible enough to constitute an extension of time in which to make and serve the case-made; but, in view of the fact that this question has not been raised by the defendant in error, the same will not be determined in this case.

Failing to find any reversible error in the record, the judgment of the lower court is affirmed.

All the Justices concur.