ANNA ARTHUR, *et al.*, v. CLARA E. ARTHUR.

1. SIGNATURE — *Genuineness* — *Witness, When Competent.*   Before a wit-
ness can be permitted to testify to the signature of a written instru-
ment, when the execution thereof is denied under oath, it must be
shown, first, that such witness was present and saw the instrument
executed; or, second, that he was acquainted with the writing and
signature of the party; or, third, that such witness is competent to
testify to the genuineness of such signature by a comparison with
other writings or signatures admitted or proven to be genuine.

2. DECLARATIONS, *Identity of Person Making; Evidence; Error.*   Where
the declarations of a party to an action are sought to be shown by
a witness, who is known to be unacquainted with such person, and
the only knowledge possessed by the witness of the identity of the
person is the declaration of such person at the time of making the
statement or declaration, and where no description of the person is

given by the witness whereby the identity of such person can be established, *held*, error to admit such declarations or statements without other proof of identity.

3. MONEY, *Paid to Judge, not to Clerk.* Where a tender of money is pleaded, which, upon an order, is paid into court, and the money so paid in is taken possession of by the judge of the court, *held*, that the refusal of such judge to pay such money over to the clerk of the court is not error.

## *Error from Shawnee District Court.*

ACTION brought by *Clara E. Arthur* against Adam Hageman, but he having died before answer, the action was revived against Anna, Samuel and Sarah Arthur, as his heirs, and Samuel Arthur as the administrator of his estate. Samuel and Henry Bealls were joined as parties defendant, against whom the plaintiff prayed incidental relief. The plaintiff sued as the widow and only heir of Frank Arthur, who was a grandson of Adam Hageman, and alleged that in November, 1878, Hageman had entered into a written contract with her late husband by which the former was to convey to the latter a certain farm near Rossville upon the payment of $1,100, which was to be paid in annual installments of $100 each. The plaintiff alleged that Frank Arthur died in August, 1880, and that previous to his death he had paid Hageman $700 on the contract; that since then the plaintiff had tendered the remainder of the $1,100, and had demanded a deed; and that Hageman had refused to accept the tender and to make a deed. She also alleged that she was ready to keep her tender good and to pay the money into court whenever so ordered; that the reason no copy of said bond was attached to her petition was the fact that said bond was not in her possession, but was in the possession of the defendants; that the same had never been recorded. And she prayed for the specific performance of the contract. The defendants answered by a general denial, and a sworn specific denial of the execution of the alleged written contract. On the application of the defendants the court ordered the plaintiff to pay the residue of the alleged purchase-money, being $400, into court; and

thereupon the plaintiff paid to the judge of the district court $400, which the court refused to pay over to the clerk of the court at the request of the defendants. Trial by the court, at the April Term, 1884. Special findings were requested and made, and a judgment was rendered against the defendants requiring them to convey the land to the plaintiff; and, in default of such conveyance, it was adjudged that the judgment itself should operate as a conveyance. The defendants bring the case to this court.

*A. H. Vance,* and *G. C. Clemens,* for plaintiffs in error.

*Overmyer & Safford,* and *Wm. P. Douthitt,* for defendant in error.

Opinion by CLOGSTON, C.: This was an action to enforce the specific performance of a contract, which the plaintiff alleged was made by and between Adam Hageman and Frank Arthur, the husband of the plaintiff, which contract was claimed to have been in writing, signed by Hageman and wife. The execution of the contract was denied under oath by the defendants, which raises the issue of its existence. After laying a sufficient foundation as to the loss of the bond, the plaintiff, to establish its contents and execution, offered in evidence the deposition of the plaintiff, which deposition was admitted in evidence over the objection of the defendants. Plaintiff was asked, among other things, as follows:

"INTERROGATORY 7: Are you acquainted with the handwriting of Adam Hageman? How many times have you seen it? *Ans.:* I have seen a great deal of the handwriting of Adam Hageman; am perfectly familiar with it, and would know it anywhere I would see it.

"INT. 8. Have you ever seen a bond for a deed for the premises in controversy? How many times have you seen it? *Ans.:* Yes, sir. After we were married, I saw it in Arthur's trunk; he handed it to me; he told me to read it, and it was written in the handwriting of Adam Hageman, and signed by him and his wife, and was acknowledged by a notary public of Atchison county, Kansas, the acknowledgment being in his handwriting, but the body of the deed was writ-

ten by Adam Hageman. I had it a number of times; perhaps as many as twenty times."

The answer to interrogatory 8 was objected to on the ground that no sufficient foundation had been laid, and because it was incompetent. We think the witness showed herself to be competent to testify as to the handwriting of Adam Hageman. Her evidence showed that she was familiar with his handwriting, and that she would know it wherever she saw it. This we think was sufficient; but as to the signature of Mrs.

1. Signature— genuineness— witness, when competent.

Hageman, no foundation was laid. The witness was not shown to have ever seen her handwriting, or to have had any knowledge whatever about it. The witness did not pretend that she was present and saw the bond signed by Mrs. Hageman, but testified that the first she saw of the bond was after she was married to Frank Arthur, which the evidence showed to have been a long time after the bond was claimed to have been executed. The objection of the defendants was well taken, and that part of the answer relating to Mrs. Hageman's name being attached to the bond ought to have been sustained. This evidence was material to the plaintiff, for unless it was shown that Mrs. Hageman signed this contract, although executed by her husband, she having survived her husband, it would give to her heirs one-half of the land.

Plaintiff also produced the deposition of William Spalding, which deposition was admitted in evidence over the objection of the defendants. Witness, among other things, was asked the following questions:

"*Ques. 2:* Do you know any of the parties to this action or suit? *Ans.:* I know one of the defendants, or at least an old man named Adam Hageman, or who told me his name was Adam Hageman.

"Q. 3. Did you ever have any conversation anywhere with him about any land in the state of Kansas; and if so, state what it was."

Witness then gave a conversation purporting to be a history of this transaction between Adam Hageman and Frank Arthur,

in which he claimed that the old man told him about the execution of this bond for the land in controversy, and that he had received $700 of the purchase-money, and that Frank's widow was too poor to pay the balance. The witness then said: "We asked him his name, and he said it was Adam Hageman, Farmington, Kansas. We took his name down on a leaf of a memorandum-book, as well as the name of his grandson, and where the land was. We were to write to him about it as soon as we saw the land." To this testimony the defendants objected, for the reason that it was not shown that the person spoken of as making the statements alleged had been in any way identified as the Adam Hageman through whom this plaintiff claimed title, and as being hearsay. This objection was overruled by the court. We think this ruling wrong.

2. Declarations, identity of person making; evidence; error.

Before the declarations of a party can be given in evidence, it must be shown that the declarations were made by that party. Here the witness was a stranger to Hageman, and all the information or knowledge in relation to his identity was derived from that conversation with the person who claimed to be Adam Hageman. No description was given of the man; nothing by which his identity could be ascertained. To admit such testimony would be to open the door to innumerable frauds. Adam Hageman now being dead, it leaves the evidence in shape to be contradicted by no one. If this could be permitted, all that it would be necessary to do in this class of cases, would be to find some stranger, have some one represent a party, and then make declarations that would be fatal to his interests, and then let that stranger go into court and testify to this conversation, without any identification of the person from whom he obtained the information. This would lead to great evil, and cannot be tolerated.

The only remaining error that we deem it necessary to examine at this time is, the complaint made by the defendants, plaintiffs in error, to the refusal of the court to pay to the clerk of the court the money which had been paid into court

to keep the tender good. Section 131 of the code of civil procedure is as follows:

" When a tender of money is alleged in any pleading it shall not be necessary to deposit the money in court when the pleading is filed, but it shall be sufficient if the money is deposited in court at the trial, or when ordered by the court."

This section is the only statute that we have been able to find referring to this question, and our attention has not been called to any other. This statute does not provide that it shall be paid to the clerk of the court. It says it shall be be paid to the court. We see no good reason why the judge of the court might not receive and hold possession of the money as well as the clerk. The plaintiff at least had done all that it was necessary for her to do in the premises. She had alleged her tender, and on the application of the defendants, and by the order of the court, she had paid the money into court, and now because one officer of the court is in possession of the money instead of another, certainly ought not to be held to be the fault of the plaintiff.

3. Money, paid to judge, not to clerk.

We recommended that the judgment of the court below be reversed.

By the Court: It is so ordered.

All the Justices concurring.