JOHN W. ARCHER AND ROBERT CRAWFORD V. THE UNITED STATES.

(Filed Feb. 8, 1900.)

1. EVIDENCE—*Demurrer to Overruled—Reversible Error, When.* When the plaintiff introduces his evidence and rests, and the defendant interposes a demurrer to the evidence, and there is no evidence in support of some material allegation of fact not admitted, it is reversible error to overrule such demurrer.

2. VERDICT—*Judgment—Weight of Evidence.* When the evidence is conflicting and contradictory, and there is some evidence tending to support each material allegation necessary to sustain the verdict, and the trial court has approved the verdict by refusing to grant a new trial, the appellate court will not disturb the judgment on the weight of the evidence.

3. WRITTEN INSTRUMENT—*Proof of Execution.* When the execution of a written instrument is denied under oath, before a witness can be permitted to testify to the genuineness of the signature thereto, it must be shown: First. That the witness was present and saw the instrument executed; or, second, that he is acquainted with the writing or signature of the party; or, third, that such witness is competent to testify, as an expert, by a comparison of the disputed signature with other writings or signatures admitted or proven to be genuine.

4. PROOF OF SIGNATURE—*How Established.* The genuineness of the writing· or signature made the basis òf comparison and sometimes called the standard writing, must be proved by direct or positive evidence, and cannot be established by comparison.

5. INSTRUCTIONS—*Questions of Law and Fact—Error.* It is reversible error for the court, in its instructions, to invade the province of the jury and take from them·the determination of a material, controverted, controlling fact, and treat it as a question of law, dependent on some collateral fact upon which the controlling fact is not necessarily dependent.

(Syllabus by the Court.)

*Error from the District Court of Pawnee County; before Bayard T. Hainer, District Judge.*

*C. J. Wrightsman* for plaintiff in error.

*S. L. Overstreet, United States Attorney,* for defendant in error.

Opinion of the court by

BURFORD, C. J.: The United States, as plaintiff, brought an action in the district court of Pawnee county against the plaintiffs in error, John W. Archer and Robert Crawford, together with other defendants, to recover the sum of $198.48 from them, as sureties on the official bond of one Thomas J. Mann, a defaulting postmaster at Cleveland, Oklahoma.    Archer and Crawford each answered separately, denying under oath the execution of the bond. The cause was tried to a jury on the issue thus presented, and a verdict was returned for the United States, and against Archer and Crawford, for the full amount claimed, and judgment was rendered on the verdict.    Archer and Crawford bring the case here on appeal.

After the plaintiff had introduced its testimony and rested, each of the defendants demurred to the evidence. The court overruled each of the demurrers, to which rulings exceptions were duly saved. This rul'ng is assigned as error.

On the trial both defendants admitted that the amount claimed in plaintiff's petition was due from former postmaster Mann to the United States, and that the bond sued on was the one the post office department ac.epted as his official bond. The only issue which was controverted was whether or not the defendants executed the bond in question as sureties. The burden was on the plaintiff to prove the execution by them by a prepo der ance of the evidence.

In *Arthur v. Arthur*, 38 Kan. 691, the supreme court of Kansas, in our judgment, correctly states the rule as to the modes of proving the genuineness of a s'gnature to a written instrument when denied under oath, thus: "Before a witness can be permitted to testify to the signature of a written instrument when the execution thereof is denied under oath, it must be shown, first, that the said witness was present and saw the instrument executed; or, second, that he was acquainted with the writing and signature of the party; or, third, that such witness is competent to testify to the genuineness of such signature by a comparison with other writ.ngs or signatures admitted or proven to be genuine."

The plaintiff relied upon the third method stated above, and offered Will H. Clark, clerk of the district court, S. B. Berry, cashier of the Bank of Pawnee, Robert Chasteen, cashier of the Arkansas Valley Bank, and C. E. Vandervoort, a banker, as experts, to prove the genuine-

ness of the signatures to the bond, by a comparison of the signatures on the bond with the signatures of the defendants to their pleadings in the case.

When Mr. Clark, the first witness for the plaintiff, was handed the bond sued on, and the answer of defendant Crawford, he was asked, "Could you say, Mr. Clark, by comparison of those two signatures, as to whether or not they were written by the same hand?" The witness answered, "Well, I would say not." And this was all the testimony he gave in relation to the signature of Crawford. The next witness, Berry, was asked the same question that was submitted to the witness Clark in reference to the signature of Crawford, and his answer was as follows:

"That is a signature that it is very difficult to give an opinion on; the formation of the letters, however, in all three signatures, are formed on the same line, on the same basis. The signature here in this paper is written in such an apparently cramped position that it is hard to get the name,—the formation of the letters to it the same as in the other two names, but still, as I said before, the formation, the general outline of the name is the same."

"Question. What do you say with reference to the capital R? Answer. Well sir, the capitals are made about the same; also the capital C."

This constituted the entire examination of this witness in reference to the signature of Crawford on the bond. The other two witnsses examined on behalf of the United States testified in reference to the signatures of Archer, but were not asked about the signature of Crawford.

We have set out fully all the evidence introduced against Crawford. This evidence was not sufficient to

overcome his sworn denial that he executed the bond. The demurrer to the evidence on behalf of Crawford should have been sustained.

"Where the evidence of the plaintiff does not support the allegations in her petition, and a demurrer is presented to such evidence by the defendant, such demurrer should be sustained, and if overruled is error." (*Wisner v. Bias*, 43 Kan. 458.)

The evidence against Crawford did not reasonably tend to support the allegations of the petition. One of the witnesses for the plaintiff testified positively in favor of Crawford, while the other did not express any positive opinion, either for or against him.

For the error of the trial court in overruling Crawford's demurrer to the evidence, the cause must be reversed as to him. And if this error had not been committed, we should be compelled to set the verdict and judgment aside as not being supported by any evidence.

After the demurrer was overruled, Crawford went upon the witness stand in his own behalf and testified positively that he never signed the bond, and that he did not sign the qualification as surety endorsed on the bond and purporting to bear his signature. He introduced several witnesses who testified to a knowledge of his handwriting, who each testified positively that the signature on the bond was not Crawford's writing. The notary before whom the bond purported to have been acknowledged testified that his signature to the bond as notary and as witness were forgeries. There was some evidence tending to contradict the notary, but none that in any manner tended to make any stronger case against Craw-

ford.    It was error for the trial court to overrule Crawford's motion for a new trial.

As to the defendant Archer, a different case is presented.    There was some positive opinion evidence tending strongly to support the allegation that he executed the bond in question.    There was positive evidence to the contrary in his favor.    The jury might have decided either for or against him and found positive opinion evidence to support their verdict.

Where the evidence is conflicting and contradictory, and there is some evidence tending to support each material issue necessary to sustain the verdict, and the trial court has approved the verdict by refusing to grant a new trial, it is the duty of the appellate court to uphold the judgment.

But there are a number of other rulings of the trial court assigned for review, which it may be well to notice. The instrument sued on was a double sheet of paper folded together; on one inside page was the bond proper, with the names of the principal and sureties, with a witness to each appearing below the bond.   On the opposite inside page appeared a certificate of the notary that the sureties whose names also appeared in the certificate were responsible and sufficient to pay double the entire penalty named in the bond.   Next below this certificate, on the same page, appears an affidavit, signed by each surety, in which he makes oath that he executed the within bond; that his place of residence is correctly stated, and that he is a freeholder and worth the sum set against his name over and above all debts and liabilities existing against him, and also over and above all exemptions.    This affidavit is signed by each surety and the

amount for which he justifies is written opposite his name
This is followed by the jurat, signature, and seal of the
notary before whom the sureties made the affidavit. The
names of both Archer and Crawford appeared to this
affidavit. After some opinion evidence had been intro-
duced as to the genuineness of the signature of Archer to
this affidavit, but none as to Crawford's, the affidavit
was offered in evidence by the counsel for the plaintiff,
and was admitted by the court over the objections of both
Archer and Crawford. This ruling is assigned as error.

We think the court erred in admitting this affida-
vit in evidence, as against Crawford. There was no proof
that he ever signed it and no attempt to prove it. But
there was sufficient evidence to make at least a *prima
facie* case against Archer. It was not sufficiently proved
to entitle the signature to be used as a basis
for comparison, but it was competent to go to
the jury for two other purposes. It constituted
a written admission against the defendant, Archer,
that he had signed the bond which was the sub-
ject of controversy, and after his signature to it had been
sufficiently identified to make a *prima facie* case, it was
proper to go to the jury for their consideration, the same
as any other oral or written admission. It was com-
petent for the further purpose or proving an estoppel.
Even if Archer had never signed the bond proper, his
name in fact appeared to it as a surety, and if he made an
affidavit that he had duly executed the bond, and this af-
fidavit accompanied the bond and was relied upon by the
government officials who accepted and approved the
bond, as an evidence of the genuineness of his signature
to the bond, he would not be permitted to question his
signature. To allow this would enable him to perpetrate

a fraud on the United States. The affidavit was one link in the evidence tending to establish an estoppel, and there was no error in permitting it to go to the jury for such purpose.

But after the affidavit was allowed in evidence, the court permitted the name of Archer to the affidavit to be used as a basis for comparison with the signature to the bond. The law requires that the signature used as a basis for comparison by experts shall be either an admitted or a proven signature. The signature to the affidavit was not admitted by the defendant, but was in fact denied. It had not been indentified to that degree that it could have been properly said that it was a proven signature.

The degree of proof required to establish the genuineness of a signature so as to make it the basis for comparison, is a question that has caused much discussion by law writers, and the courts are by no means harmonious on the subject.

Mr. Rice, in his work on Evidence, vol. 1, p. 339 says: "Even in other states, where the common law rule has been relaxed by statutory innovation it is nevertheless held that the standard of comparison sought to be introduced must be either admitted to be genuine or proved so to be by undoubted evidence;"citing in support of the text: *McKeone v. Barnes*, 106 Mass. 344; *Pavey v. Pavey*, 30 O. St. 600; *Van Sickle v. People*, 29 Mich. 61; *State v. Hastings*, 53 N. H. 452; *Travis v. Brown*, 43 Pa. 9; *Baker v. Mygatt*, 14 Iowa, 131.

It has been held in Iowa that it is reversible error to allow a document to go to the jury as a standard of comparison, where the only proof of its genuineness consists

in comparison by experts with some other writing admitted to be genuine.

In *Winch v. Norman,* 65 Iowa, 186, the court said:

"But we have seen no case where it has been held admissible to make a given writing the basis of comparison, where its own genuineness is shown only by comparison with some other writing. It appears to us that the genuineness of the writing made the basis of comparison, called sometimes the standard writing, should be proved by direct or positive evidence. * * Evidence of experts based upon comparison is at best not very reliable, and we do not think that we should be justified in holding that writing can be used as standard writing, the evidence of whose genuineness rests only on opinion."

We regard the reasoning and conclusion of the Iowa court as sound, and think we may safely adopt it. To say that the standard writing may be established by comparison with some other standard is to base a probability upon a probability, and if this may be done in the first instance, it may be followed by proving successive standards by comparison with other standards resting solely on opinion evidence, until the real question to be established is lost in confusion.

After the affidavit of Archer, the signature to which was only proven by at least doubtful and unsatisfactory opinion evidence, had been received in evidence, the court, over the objections of Archer, permitted the signature to the affidavit to be used as a standard writing, and as a basis for comparison in attempting to prove the execution of the bond sued on. This we think was error, was misleading to the jury, and prejudicial to the defendant Archer.

A number of other alleged errors are assigned, but we deem it unnecessary to review them here.

There was one instruction in the charge of the court to the jury which we think deserves mention. The court said to the jury that if they found that Crawford and Archer signed the affidavit of qualification to the bond, the law would presume that they executed the bond. This was not a correct statement of law. It invaded the province of the jury; it took from the jury the one controlling fact they were to determine from the evidence, and made it a question of law dependent upon a collateral fact, which might exist independent of the main fact in issue.

The judgment must be reversed as to Archer.

The judgment of the district court of Pawnee county is reversed as to both Archer and Crawford, and new trials ordered. Cause remanded for further proceedings, at costs of defendant in error.

Hainer, J., having presided in the court below, not sitting; all of the other Justices concurring.