## LOOKABAUGH V. BOWMAKER.

No. 2038, Okla. T.   Opinion Filed June 24, 1908.

(96 Pac. 651.)

1.  **PLEADING—Amendment to Conform to Proof—Cause of Action Not Changed.**  It is not error for the trial court to permit plaintiff, before judgment, to amend his petition to conform to the facts proved, when such amendment does not substantially change the cause of action.

2.  **SAME—Case.**  One who seeks to cancel a mortgage upon the grounds that same was obtained from him fraudulently, and was fraudulently altered by the mortgagee to include other property not described therein when executed, does not change his cause of action by amending his petition so as to charge that said mortgage is a forgery and a substitution for the mortgage, which was read to him and which he was asked to sign.

3   **APPEAL AND ERROR—Review—Findings of Trial Court—Conclusiveness.**  Where a cause is submitted to a trial court without a jury upon evidence upon all points necessary to be included in all findings made by the court, and when such evidence fairly tends to support the findings of the court, such findings will be conclusive upon the Supreme Court.

(Syllabus by the Court.)

*Error from District Court, Blaine County; James K. Beauchamp, Judge.*

Action by John P. Bowmaker against I. H. Lookabaugh. Judgment for plaintiff, and defendant brings error. Affirmed.

This action was brought by John P. Bowmaker, defendant in error (plaintiff below), against I. H. Lookabaugh, plaintiff in error (defendant below), to cancel a certain real estate mortgage. After a jury had been impaneled and all the evidence of both parties was introduced, upon agreement of both parties to the action, the jury was excused, and the cause submitted to the court upon questions both of law and fact. The court found

for the plaintiff, and rendered judgment canceling the mortgage as to the N. W. ¼ of section 22, township 16 N., range 12 W., but not as to the S. E. ¼ of section 2, township 19 N., range 10 W. From the judgment of the trial court appeal has been taken to this court. The matters presented by petition of plaintiff in error require a somewhat voluminous statement of the facts which will appear in the body of the opinion.

 *Snyder & Clark*, for plaintiff in error.
 *Hotchkiss & Emery*, for defendant in error.

HAYES, J. (after stating the facts as above). Just prior to August 9, 1904, defendant in error was the owner of the S. E. ¼ of section 22, township 19 N., range 10 W., in Blaine county, Okla. T., and resided upon the same as his homestead, which place will hereinafter be referred to as Bowmaker's homestead. He also owned at that time a quarter section of land in Woods county, which will be referred to as the Woods county farm. Plaintiff in error at said time owned the N. W. ¼ of section 22, township 16 N., range 12 W., in Blaine county, which will hereinafter be referred to as Lookabaugh's farm. A short time prior to August 9, 1904, negotiations were begun between Bowmaker acting through one R. V. Converse with Lookabaugh, by which Lookabaugh was to exchange his farm for Bowmaker's Woods county farm, and ultimately a trade was between the 9th and 11th of August consummated by them, but the exact date on which the deal was consummated is one of the matters in controversy in this action, and becomes important in determining the rights of the parties herein. The terms of the transaction by which the transfers of the farms were made, in so far as is not controverted, were that Lockabaugh conveyed to Bowmaker his farm, 40 cattle, and 15 horses, and received in consideration therefor a conveyance by Bowmaker of his Woods county farm and of certain lots located in the town of Cherokee, and, in addition thereto, the sum of $2,000, evidenced by a note from Bowmaker to Lookabaugh,

secured by a real estate mortgage on the farm conveyed by Look-abaugh to Bowmaker, and, as contended by Lookabaugh, also on Bowmaker's homestead. The contention of Bowmaker, however, is that the mortgage was to cover, and did cover, when executed by him, only the farm he had received from Lookabaugh.

It is alleged by Bowmaker in his petition, and was contended by him throughout the trial, that the transaction was consummated on August 10th; that on that day he, Lookabaugh, and Converse met in the Merchants' Bank at Okeene, and that a deed conveying the Woods county farm and a mortgage on the Lookabaugh farm were executed by him and delivered to Look-abaugh; that Lookabaugh executed and delivered to Bowmaker a deed to his farm; that the mortgage he (Bowmaker) executed and delivered to Lookabaugh on the 10th day of August covered only the farm that he had received from Lookabaugh. He further alleges in his amended petition that on the night of August 11, 1904, at about the hour of 11:30 R. V. Converse came to his (Bowmaker's) home, and represented that the mortgage he had executed on the day before to Lookabaugh on the farm obtained by him from Lookabaugh had been accidently torn and mutilated by a dog, so it was impossible to have the same placed on record; that Converse represented he had prepared another mortgage identical with the one that had been given by Bow-maker to Lookabaugh, and had brought with him such mortgage so prepared, with the torn and mutilated mortgage, and that Converse requested Bowmaker to execute the new mortgage that had been prepared, stating that upon his doing so the first mortgage would be returned to Bowmaker; that said representations made by Converse were false and fraudulent, and were made for the purpose of securing a new mortgage from Bowmaker, so that the same could be altered and changed so as to include therein the homestead of Bowmaker. Bowmaker alleges in his petition that he signed the new mortgage on the night of the 11th, when it was presented to him by Converse, but that it contained only the Lookabaugh farm; that between the 11th day of August and

the morning of the 13th, on which day the mortgage was filed for record, said Converse·and defendant fraudulently and falsely made material alterations in the mortgage without the knowledge or authority or consent of Bowmaker, thereby making said mortgage include and cover Bowmaker's homestead, and alleges that, in the transaction by·which the second mortgage was obtained from him, Converse acted as the agent of Lookabaugh.

Lookabaugh, on the other hand, contends in his answer and throughout the trial that no deal was consummated at Okeene on the 10th day of August, but that only certain papers were prepared on that day, and that he never on the 10th day of August delivered to Bowmaker a deed to his farm, nor did he receive from Bowmaker the deed to the Woods county farm, nor the mortgage in question, but that on .the 11th day of August, Converse, who he alleges was the agent of Bowmaker, came to Watonga, where Lookabaugh resided, and brought with him the papers executed by Bowmaker, including a mortgage from Bowmaker, which included only the Lookabaugh farm; that he (Lookabaugh) refused to accept the mortgage or to close the deal, unless Bowmaker executed to him a mortgage on both the farm conveyed by Lookabaugh to Bowmaker and the farm occupied by Bowmaker as a homestead; that Converse stated that he could obtain from Bowmaker such a mortgage, and· that the deal could be closed upon those terms; and that Converse went away and returned the next day with a mortgage· from Bowmaker covering both the farms; and that at that time the deal was closed, and he delivered to Converse his deed conveying to Bowmaker his farm. He received from Converse Bowmaker's deed to the Woods county farm and a mortgage on the two farms.

The court permitted Bowmaker, ·over the objection of the defendant, to testify about the conversation had between him and Converse on the night of the 11th, when the second mortgage was executed in the absence of Lookabaugh, which conversation was to the effect that the only reason the second mortgage was desired was that the first had been torn and mutilated by a dog, and that

the second mortgage included only the same land that was included in the first mortgage. It is insisted that the admission of this testimony was erroneous, for the reason that these conversations were had between Bowmaker and his agent in the absence of Lookabaugh. Bowmaker contends, however, that this testimony was admissible, for the reason that Converse's agency with him had ended upon the consummation of the deal on the 10th day of August, and at the time the second mortgage was obtained Converse represented Lookabaugh. No special finding was requested of or made by the court upon this issue, and the court having made a general finding in favor of the plaintiff, and since the evidence is very conflicting as to whether the transaction was closed on the 10th day of the month, in which event the agency of Converse for Bowmaker would have been terminated before the execution of the second mortgage, or whether the transaction was closed on the 12th day of the month after the second mortgage had been obtained from Bowmaker, the issue as to whose agent Converse was at the time he had the conversation with Bowmaker on the night of the 11th will be considered as having been by the trial court determined against Lookabaugh's contention, and, since there is evidence in the record fairly tending to support the general findings of the court, the action of the trial court in admitting statements of Converse to Bowmaker on the night the second mortgage was executed was not error.

The wrong complained of by plaintiff, and for which he seeks to cancel the mortgage in controversy as alleged in his petition was that the mortgage executed by him on the night of the 11th of August at his home had been altered and changed by the defendant, Lookabaugh, or his agent, Converse, so as to include plaintiff's homestead. The evidence developed that there had been no change or alteration in the mortgage since it was signed by plaintiff on the night of the 11th of August; that the mortgage was drawn by one Dora Hamilton, a notary public in Okeene, late in the afternoon of the 11th; that the notary accompanied Converse on the night of the 11th of August to Bowmaker's home. The

mortgage was signed by Bowmaker, but not in the presence of the notary. After he signed same, he appeared before the notary, and stated that he had signed same, and acknowledged to the execution of it. The notary testified that the mortgage existed at the time of the trial just as it was on the night it was signed by Bowmaker, and that it contained both tracts of land. There was evidence that Converse, when he approached Bowmaker on the night of the 11th to secure his signature to the second mortgage, took Bowmaker out of hearing of the notary and any other persons, and showed him a mortgage which was identical with the former mortgage executed by Bowmaker, and which was claimed by Converse to have been torn by a dog, and there is evidence to the effect that after Converse exhibited the mortgage to Bowmaker, and Bowmaker became satisfied that the mortgage was the same as the former one he had signed, Converse placed the mortgage into his pocket, took therefrom the old mortgage, and delivered it to Bowmaker, and then took a mortgage out of his pocket in a folded condition which Bowmaker signed, and which developed to be the mortgage in controversy in this case, but not the mortgage formerly shown to Bowmaker and read by him. After all the evidence had been introduced and both parties had rested their case, plaintiff, over the objection of defendant, was permitted to amend his petition by adding thereto the following words:

"And plaintiff further alleges the fact to be that he never executed nor delivered said mortgage sought to be set aside in this action. The same is a forgery and a substitution for the mortgage that was read to him, and the mortgage which he was asked to sign."

The court made the following finding relative to the execution of this mortgage:

"And now, after mature consideration and deliberation and after hearing the arguments of the attorneys for both sides, plaintiff and defendant, the court finds that the mortgage on the two quarter sections of land, dated August 11, 1904, alleged to have been signed by the plaintiff and relied upon by defendant, was

not the mortgage that the plaintiff intended to sign when he affixed his signature thereto, and he thought that he was signing a mortgage that had just previously been shown to him by the witness Converse which covered only one section of land.  *  *  *"

Plaintiff in error insists that the action of the court permitting plaintiff to amend his petition as above stated was error, for the reason that it changed the cause of action in violation of the statute.  Section 4343, Wilson's Rev. & Ann. St. Okla. 1903, provides:

"The court may before or after judgment, in furtherance of justice, and on such terms as may be proper, amend any pleading, process, or proceeding by adding or striking out the name of any party, or correcting a mistake in the name of a party, or a mistake in any other respect, or by inserting other allegations material to the case, or conform the pleading or proceeding to the facts proved, when such amendment does not change substantially the claim or defense; and when any proceeding fails to conform, in any respect, to the provisions of this Code, the court may permit the same to be made conformable thereto by amendment."

Did the amendment permitted by the court in this case change the cause of action?

"As long as the plaintiff adheres to the contract or the injury originally declared upon, an alteration of the modes in which the defendant has broken the contract or caused the injury is not an introduction of a new cause of action.  The test is whether the proposed amendment is a different matter, another subject of controversy, or the same matter more fully or differently laid to meet the possible scope and varying phases of the testimony."  (1 Enc. Pld. & Pr. p. 564).

The cause of action in the case at bar primarily is that by the wrongful acts of defendant a false and fraudulent mortgage has been placed upon record by which the title to plaintiff's property has been clouded.  The amended petition, as it originally stood, declared the acts by which this was accomplished to be an alteration of the mortgage as originally written.  His petition as amended in conformity with the proof alleges that the

fraudulent acts on account of which this mortgage was sought to be set aside, and by which it came into existence, were that the mortgage in controversy was substituted for one that was originally shown him and read by him, and that he was asked to sign and by reason of such facts his signature thereto is a forgery. Under the allegations of the amended petition, as originally filed, and as it existed after amended at the conclusion of the trial, the ground of action of plaintiff was that the title of his land had been incumbered by a false and fraudulent mortgage, and the only variation in the allegations of the amended petition occasioned by the last amendment was as to the acts constituting the fraud. The subject of controversy was not changed. It was the same mortgage under consideration, and the action of the court in permitting the amendment was neither in violation of the statute nor an abuse of judicial discretion.

It is also contended by plaintiff in error that the finding and judgment of the court is contrary to the evidence and the law; that there is no evidence to support the finding of the court that the mortgage in controversy is a forgery; and further contends that, if it is defendant is an innocent holder of same for value. It is immaterial in this case whether the facts proved under the finding and judgment of the court bring the execution of the mortgage in controversy within the technical definition of a forgery. The court has found, and the finding is supported by evidence fairly tending to prove same, that the mortgage in controversy is a substitution for the one intended to be signed by plaintiff, and that plaintiff never intended to sign and deliver said mortgage, and there is also evidence tending to establish that the transaction between plaintiff and defendant was completed on August 10th, and the agency of Converse for plaintiff on that day ended. There is much evidence in the record which if believed, tends very strongly to contradict this contention, but the witnesses were before the trial court, and the court had an opportunity to observe their conduct upon the witness stand and determine who should be believed and who should not be believed,

and the general finding of the court in favor of plaintiff has determined the issue of whose agent Converse was at the time of the execution of the mortgage in controversy against defendant. Since the evidence fairly tends to establish same, under the well-established rule of this court so often followed that it is hardly necessary to cite instances, the finding of the trial court will not be disturbed. If Converse was the agent of Lookabaugh at the time the second mortgage was procured from Bowmaker on the night of August 11th, Lookabaugh was a party to the fraud by which the mortgage in controversy was procured, and is estopped from now claiming the benefits of his wrong.

Plaintiff in error contends, further, that the judgment of the court is contrary to the law, for the reason that, if the mortgage is a forgery, or was never intended to be signed and delivered by defendant in error, but was obtained from him through fraud, then the action of the court in canceling the mortgage as to the homestead of Bowmaker, but directing that it remain in force and effect as to the other quarter section of land, is contrary to the law, for the reason that under such finding the whole instrument is void. Plaintiff cannot be heard to complain of this action of the court, for the reason that, if it be error, it is in plaintiff's favor, and he is not prejudiced thereby. 2 Enc. Pld. & Pr. p. 527.

This case was tried to the court without a jury, and the court made a general finding of facts in favor of the plaintiff, and, by doing so, the court found every special thing necessary to be found to sustain the general finding, and such finding of the court is conclusive upon this court when the evidence fairly tends to support the same. When the evidence is conflicting, and the greater portion of the same consists of oral testimony, as it does in this case, and where the trial court had an opportunity to hear the witnesses as they testified and to observe their demeanor on the witness stand, this court will not weigh the evidence for the purpose of disturbing the judgment of the trial court on the weight of the evidence. *Dunham v. Holloway,* 3 Okla. 244, 41

Pac. 140; *Hockaday v. Jones,* 8 Okla. 156, 56 Pac. 1054; *Archer v. United States,* 9 Okla. 569, 60 Pac. 268.

The judgment of the trial court is affirmed.

All the Justices concur.